## TOLLEY ET AL. *v*. THOMAS.

[No. 6,806.   Filed December 9, 1910.]

1. ADVERSE POSSESSION.—*Color of Title.*—Possession alone, though continued for twenty years, will not disseize the owner, nor constitute adverse possession. p. 563.

2. ADVERSE POSSESSION.—*Answer of.*—*Sufficiency.*—An answer that the defendant, in 1880, received a sheriff's deed to the land in dispute, paying therefor, that it was duly recorded, that he immediately took possession and has remained in open, public, notorious, adverse, peaceable and exclusive possession for more than twenty years, claiming to be sole owner and exercising complete dominion over it, that he conveyed a right of way across it, paid drainage assessments, fenced it, rented it, collecting and using the rents, paid the taxes, quieted title as against a mortgage thereon, guarded the land and cared for it, and that he

neither knew the claimants nor knew of their claims during the twenty years, shows color of title and actual adverse possession. pp. 563, 564.

3. ADVERSE POSSESSION.—*Actual.—Character of.*—Actual possession is deemed to be such possession as is consistent with the character of the land in question, its locality, and its suitable use. p. 564.

4. ADVERSE POSSESSION.—*Evidence.—Admissibility.*—Under a claim of adverse possession, any evidence tending to show actual, open and notorious possession under a claim of right, to the exclusion of all others, for twenty years, is admissible. p. 565.

5. ADVERSE POSSESSION.—*Effect of.—Color of Title.*—Actual adverse possession for twenty years has the effect of a conveyance from the owner, and it is not necessary to show color of title. p. 566.

6. VENDOR AND PURCHASER.—*Subsequent Grant of Same Land.— Trusts.—Adverse Possession.*—Ordinarily a subsequent grantee of a vendor who has already granted the same land, holds as a tenant, or trustee, for such first grantee; but such rule, where the subsequent grantee's possession is hostile and adverse, yields to the rule that adverse possession for twenty years perfects the title. p. 566.

From Starke Circuit Court; *Adrian L. Courtright,* Special Judge.

Suit by Benjamin F. Thomas against William V. Tolley and others. From a decree for plaintiff, defendants appeal. *Affirmed.*

*Henry M. Dowling, James A. Pritchard, Peters & Peters* and *Charles C. Kelley,* for appellants.

*Otis E. Gulley,* for appellee.

MYERS, J.—In the court below appellee commenced a suit which he prosecuted to judgment against appellants quieting his title to certain real estate in Starke county, Indiana. The complaint was in one paragraph, answered by a general denial. Appellants' cross-complaint in one paragraph was answered by appellee in five paragraphs, to all of which except the first, which was a general denial, a reply in denial was filed.

The errors relied on for a reversal of that decree are

based on the overruling of appellants' demurrer to appellee's amended fifth paragraph of answer to appellants' cross-complaint, and on the overruling of appellants' motion for a new trial.

In the cross-complaint it is alleged that Eliza E. Tolley —a person of unsound mind, and in this suit represented by a guardian—and Elmer E. Tolley are the sole heirs of William V. Tolley, deceased, who derived title to the real estate in controversy by a deed from John C. Parr and wife on February 15, 1877, which deed was recorded April 12, 1877, in the office of the recorder of Starke county; that said Eliza E. Tolley and Elmer E. Tolley are the absolute owners of said real estate, and that the interest therein claimed by appellee is inferior and junior to their title, and they ask to have their title quieted.

In substance said fifth paragraph of answer shows that on July 20, 1878, the sheriff of Starke county duly sold said real estate to appellee for $355.42; that said sale was made upon a decree foreclosing a mortgage executed by Milton R. Bailey to appellee; that on April 5, 1880, the sheriff executed to appellee a sheriff's deed for said real estate, which deed was duly recorded on the day of its execution; that appellee on April 5, 1880, believing said sheriff's deed vested in him the absolute fee-simple title to said real estate, in good faith entered upon said land, and for more than twenty years continuously remained in open, public, notorious, adverse, peaceable and exclusive possession thereof, claiming to be the sole and absolute owner thereof, and exercising sole authority and dominion over it, and during said period of time performed the following acts of ownership: (1) Conveyed to the National Transit Company, by deed dated June 15, 1888, the right to lay and operate a pipe-line across the land, which deed was recorded on the same day in deed record No. 31, in the office of the recorder of said county; (2) paid sundry drainage assessments

against the land as they accrued between January 5, 1899, and May 21, 1903, aggregating $431.60; (3) fenced said real estate on May 28, 1900, and on August 8, 1903, at a cost of $131.82; (4) rented said real estate for pasturing purposes, cut wild grass since May 28, 1900, and collected and used the rents therefor; (5) paid all taxes from April 5, 1880, aggregating $236.59; (6) procured decree at October term of the Starke Circuit Court for the cancelation of a mortgage executed by William V. Tolley to John C. Parr, in a suit brought by appellee against a William V. Folley and wife and John C. Parr and wife, and (7) visited the land between April 5, 1880, and the commencement of this suit, looked after the land and guarded timber thereon, by his agents, who publicly announced their authority from him so to do. That said possession and dominion exercised by appellee since April 5, 1880 was the only possession practicable to exercise over said land; that said land was not and is not capable of any other possession or of being put to any other uses than as aforesaid, is what is known as Kankakee marsh land, and before said drainage proceedings were had was mostly under water and unfit for cultivation as farming land or for human habitation; that since said drainage proceedings it has been practicable to use it for pasture purposes, and for cutting grass to make wild hay, but remains unfit for general farm use or human habitation; that appellee never knew William V. Tolley, and never heard or knew of him, nor any of the cross-complainants, until about November, 1903; that since April 5, 1880, and for several years prior thereto, said William V. Tolley, who died on or about the ——— day of ———, 190—, resided in Indianapolis, Indiana; that during all of said time appellee lived at Danville, Indiana, twenty miles from Indianapolis, and, notwithstanding easy and convenient railroad, mail and telegraph communications between said places, it never came to the knowledg· of appellee that William V. Tolley claimed any interest whatever in the land.

nor that said Tolley ever disputed plaintiff's claim to possession or absolute ownership in fee simple thereto.

The only objection urged against this answer is that it does not show that appellee had color of title to the land, nor that his occupancy was actual, visible and continuous for more than twenty years, and that constructive possession without color of title is insufficient as a basis of acquiring title.

Appellants have furnished us with an ingenuous argument tending to show that the sheriff's deed to appellee herein furnishes no basis for a claim of color of title. It must be kept in mind that appellee's claim of title is not based alone on the sheriff's deed. The facts set forth in the answer are to be taken as true, and, if we are not mistaken, appellants have failed correctly to interpret it. They assume that the answer shows only constructive possession of the land by appellee, and then proceed to argue that constructive possession without color of title is insufficient to uphold title or ownership, although such possession may have continued for the full term of twenty years. The decided cases are well agreed, that possession alone will not disseize the rightful owner, nor vest title in the possessor. Such is the holding in the case of Ronan v. Meyer (1882), 84 Ind. 390; Henry v. Stevens (1886), 108 Ind. 281; Cashman v. Brownlee (1891), 128 Ind. 266. But as we read the answer, an entirely different case is here presented. When drawing this answer the pleader evidently had before him the case of Worthley v. Burbanks (1897), 146 Ind. 534. For in the case at bar, as in that case, the five indispensable elements to show title by adverse possession appear. All of these elements are directly averred in the answer in question, except it may be said that actual possession is not averred in so many words, nor in a strict and limited sense was occupancy for twenty years shown in the case last cited; but there as here, it appeared that the lands were not avail-

able for any productive use, and in speaking of what is meant by possession, the court said: ''It is manifest that there can be no absolutely unvarying rule with reference to every class of real estate, and that the required occupancy of or dominion over a section of desert lands, of a mining camp, a non-navigable lake, a prairie, a forest, a fertile farm in a high state of cultivation, or a town lot would not answer as to a lot in the business center of a populous and thrifty city. As said in *Ewing* v. *Burnet* [1837], 11 Pet. *41, 9 L. Ed. 624: 'So much depends on the nature and situation of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it, that it is difficult to lay down any precise rule adapted to all cases.' And, as said in the early case of *Robison* v. *Swett* [1825], 3 Me. 316, where 'lands being wild and uncultivated, the jury were not to expect the same evidence of occupancy which a cultivated farm would present to them.' ''

From what is thus said we must infer actual possession is such possession as is consistent with the character of the land in question, its locality and its suitable uses.

3. The facts disclosed by this answer show that the subject-matter of this action, until about the year 1890, was wild, marsh land, and for most of the time under water, then and now unfit for cultivation or human habitation. Appellee asserted every possible act of ownership, and assumed such dominion as the quality of the land would permit, to the exclusion of all others, and put it to every use to which it was adapted, and that, too, without asking permission, and in disregard of all other conflicting claims. It appears from the cross-complaint that William V. Tolley received a deed for the land in 1877, and the answer shows that up to the time of his death, more than twenty years after April, 1880, he had done nothing indicating a claim of ownership of the land, nor did any other person deny the unconditional claim of

ownership that appellee, during all that time, asserted. The sufficiency of the answer is supported by *Worthley* v. *Burbanks, supra; Collett* v. *Board, etc.,* (1889), 119 Ind. 27, 4 L. R. A. 321; *May* v. *Dobbins* (1906), 166 Ind. 331; *Webb* v. *Rhodes* (1902), 28 Ind. App. 393; *Wood* v. *Ripley* (1901), 27 Ind. App. 356; *Burr* v. *Smith* (1899), 152 Ind. 469.

In support of the motion for a new trial, it is insisted that the decision of the court is not sustained by sufficient evidence, and that the court erred in admitting, over appellants' objection, certain testimony tending to show adverse possession of the land by the appellee. In support of these assignments, appellants have directed our attention to certain special findings, which, it is claimed, are not sustained by the evidence. We have carefully read the evidence disclosed by the record, keeping in mind appellants' contention, and we think it sufficient to say that it would be a waste of time and space to take up each finding separately, and quote evidence, of which there is an abundance, to support each material finding. This conclusion is reached on the theory that all the evidence before the court was properly admitted.

Appellants objected to all evidence tending to show title in appellee by adverse possession. The question of the admissibility of this evidence is before us.

We are convinced that the fourth and the amended fifth paragraphs of answer proceeded upon the theory of title to the land in appellee by adverse possession, continued for more than twenty-three years. Under these paragraphs we are inclined to the opinion that all evidence which tended to show actual, open and notorious possession by appellee, under a claim of ownership, to the exclusion of all others, and continuing for the statutory period of twenty years, was clearly admissible.

The doctrine of adverse possession is as effectual to pass title to the occupant as though he had acquired it from the

true owner by a conveyance at the time of the com-
5. mencement of his possession, and it is not essential,
where it is shown that such possession was actual,
that it should have been under color of title.  *Wood* v. *Ripley, supra; Wood* v. *Kuper* (1898), 150 Ind. 622; *Dyer* v.
*Eldridge* (1894), 136 Ind. 654.  The parties to this action
are able to trace, by regular line of conveyances,
6. their title back to Robert P. Rankin, and as Robert
P. Rankin, the common source of title, executed a
deed in the line under which appellants claim, prior to the
deed in the chain through which appellee claims, it is ar-
gued that those claiming under the second conveyance of
Robert P. Rankin were estopped by the first deed from as-
serting adverse possession, on the theory that the possession
of Robert P. Rankin,.after the first deed, was that of tenant
or trustee of the grantee, and that the same rule applied
to his subsequent grantees.

As a general rule, the contention of appellants in this
particular is supported by reason and authority, for, as said
in the case of *Fite* v. *Doe* (1820), 1 Blackf. *127, *129:
"The presumption always is, that the possession is in ac-
cordance with the regular title, until there is clear and pos-
itive evidence to the contrary."  While this doctrine is pre-
served in the decisions and text-books, another principle,
equally well settled, and referred to in the case last cited,
extends the rule and allows the inquiry as to whether that
possession was hostile to the title of the grantor, and if such
possession is found to be really adverse for the full statu-
tory period, the presumption of possession in accordance
with the regular title will yield to that shown by the proof.
1 Cyc. 1040; *Stevens* v. *Whitcomb* (1844), 16 Vt. 121;
*North* v. *Barnum* (1840), 12 Vt. 205; *Abbett* v. *Page*
(1890), 92 Ala. 571, 9 South. 332, *Knight* v. *Knight* (1899),
178 Ill. 553, 53 N. E. 306; *Watson* v. *Gregg* (1840), 10
Watts 289, 36 Am. Dec. 176; *Reynolds* v. *Cathens* (1858),
50 N. C. 437; *Pipher* v. *Lodge* (1818), 4 S. & R. (Pa.) *310;

*Burkhalter* v. *Edwards* (1855), 16 Ga. 593, 60 Am. Dec. 744; *Smith* v. *City of Osage* (1890), 80 Iowa 84, 45 N. W. 404, 8 L. R. A. 633; *Waltemeyer* v. *Baughman* (1884), 63 Md. 200; *Schwallback* v. *Chicago, etc., R. Co.* (1887), 69 Wis. 292, 34 N. W. 128, 2 Am. St. 740; *Schwallback* v. *Chicago, etc., R. Co.* (1888), 73 Wis. 137, 40 N. W. 579; *Proprietors, etc.,* v. *Springer* (1808), 4 Mass. 416, 3 Am. Dec. 227; *Mannix* v. *Riordan* (1902), 75 App. Div. 135, 77 N. Y. Supp. 357; *Pittsburgh, etc., R. Co.* v. *Stickley* (1900), 155 Ind. 312; *Davis* v. *Waggoner* (1908), 42 Ind. App. 115.

Judgment affirmed.