**SNOWBALL CORPORATION,**
Appellant–Plaintiff,

v.

**Leo POPE and Beulah Locke Pope,**
**et al., Appellees–Defendants.**

No. 32A01–9103–CV–78.

Court of Appeals of Indiana,
First District.

Nov. 14, 1991.

Russell M. Webb, Jr., Harden & Webb, Plainfield, for appellant-plaintiff.

Ernest P. Schnippel, Brownsburg, for appellees-defendants.

BAKER, Judge.

This dispute concerns ownership of an unimproved parcel of real estate located in Brownsburg, Indiana. Plaintiff-appellant Snowball Corporation (Snowball) initiated an action to quiet title to land it claimed it owned. Defendant-appellees Leo and Beulah Locke Pope (the Popes) counterclaimed on a theory of adverse possession. From an adverse judgment in favor of the Popes, Snowball appeals and raises two issues for our review:

1. Whether the ten years in which a true owner must oust an adverse claimant is stayed if the owner is unaware of its true ownership.

2. Whether the Popes' use of the land in question was sufficiently notorious, ex-

clusive, and open and visible to satisfy the elements of an adverse possession claim.

We affirm.

## FACTS

The disputed real estate in question is located as part of 35 Odell Street, Brownsburg, Indiana, and comprises about 8,000 square feet of land. Leo and Buelah Locke Pope have lived there since 1956, when they purchased a house and moved it onto the property. Until 1957, most if not all of the disputed section of land was a swamp approximately three feet deep. It was usable only occasionally as a garden during dry summers and as a makeshift skating rink in the winter. The swamp was mostly filled in 1957. At one point there was at least one fence surrounding the entire property, but only an occasional post remains today. Lines of trees demarcate the approximate boundaries of the disputed land, which now appears as simply an extension of the Popes' lawn.

## DISCUSSION AND DECISION

### I.

 "It is well established in Indiana law that title to real estate may be defeated by adverse possession where the possession has been actual, visible, notorious, exclusive, under a claim of ownership, hostile to the true owner, and continuous for the statutory period." *Estate of Mark. v. H.H. Smith Co.* (1989), Ind., 547 N.E.2d 796, 799. Further, IND.CODE 32–1–20–1 imposes an additional adverse possession element: the adverse claimant must have paid all taxes and special assessments falling due on the real estate during the period the adverse claimant possessed the land adversely.[1] The party seeking title by adverse possession has the burden of proving all elements. *Id.* Once the elements are established, fee simple title to the disputed tract of land is conferred upon the possessor by operation of law, and title is extinguished in the original owner. *Marathon Petrole-*

---

1. Although Snowball mentioned the requirement of tax payments in the statement of facts section of its brief, it presented no argument on the question in its argument section. Conse-

quently, no issues regarding tax payment are before us for review. *Deckard v. Mathers* (1972), 152 Ind.App. 440, 284 N.E.2d 92.

*um Co. v. Colonial Motel* (1990), Ind.App., 550 N.E.2d 778, 782. An action to oust an adverse claimant must be initiated within ten years after the accrual of the cause of action. IND.CODE 34–1–2–2(6).

■ Snowball argues the ten year statute of limitations is stayed if the true legal owner is unaware of its ownership. Snowball cites two Indiana cases in support of this argument, *Marengo Cave Co. v. Ross* (1937), 212 Ind. 624, 10 N.E.2d 917, and *Abel v. Love* (1924), 81 Ind.App. 328, 143 N.E. 515. Both cases, however, are inapposite inasmuch as they address the situation in which the true owner, while aware of his ownership, is unaware of the adverse possessor's activities.

Simply put, the ten year statute of limitations is not stayed when the true owner is unaware of its ownership. Were we to rule otherwise, the entire doctrine of adverse possession would be abrogated. This was recognized by the court in *Craven v. Craven* (1913), 181 Ind. 553, 103 N.E. 333, an adverse possession case, in which the court said that "[t]he bare fact that [the true owner] had no knowledge of his rights to the land would not prevent the statute [of limitations] running." *Id.* at 559, 103 N.E. at 335.

The trial court did not err in failing to rule that the statute of limitations was stayed because Snowball was unaware it was the true owner.

## II.

As its second contention on appeal, Snowball argues the Popes failed to meet their burden of proof in proving their adverse possession. Specifically, Snowball insists, the Popes offered no evidence that they mowed or maintained the disputed property on any regular basis, or that they erected or maintained any fences, ornamentation, or improvements on the disputed land. This lack of evidence shows the Popes failed to prove the notorious, exclusive, and open and visible elements of their claim. In essence, Snowball maintains, the evidence was insufficient to support the adverse judgment it received from the trial court.

■ When we review a claim concerning the sufficiency of the evidence, we will neither reweigh the evidence nor reassess the credibility of the witnesses. Instead, we view only the evidence supporting the judgment. If each material element is supported by substantial evidence of probative value, we will not disturb the judgment. *Marathon Petroleum Co., supra* at 782. We turn to each of the three elements Snowball says was absent.

### A. Notorious

■ In the context of adverse possession claims, "notorious" possession means possession "so conspicuous that it is generally known and talked of by the public—at least by people in the vicinity of the premises." *McCarty v. Sheets* (1981), Ind., 423 N.E.2d 297, 301 (quoting *Philbin v. Carr* (1920), 75 Ind.App. 560, 584, 129 N.E. 19, 27). The idea is to alert the owner that a stranger is asserting dominion over the owner's land. *Id.*

■ Here, there was substantial evidence supporting the trial court's conclusion that the Popes' possession was notorious. Both Leo and Buelah Locke Pope have lived at the disputed real estate since 1956. Evidence was admitted showing that in 1957 the Brownsburg Town Board was aware of the Popes' possession when it required the Popes to fill the swamp that was then on the land. Marjorie Stephens, a long-time Brownsburg denizen, in referring to the disputed land testified, "I know that we all considered that to be Pope, the Pope's land. Enjoyed the flowers." *Record* at 242. Laverne Armstrong, another long-time Brownsburg resident, testified that he too had not heard or considered that the property belonged to anyone else until Snowball made its claim. The trial court was correct in determining the Popes' possession was notorious.

### B. Exclusive

■ An exclusive possession is one in which only one entity claims possession adversely. "It is evident that two or more persons cannot hold one tract of land ad-

versely to each other at the same time." *Marengo Cave, supra,* 212 Ind. at 633, 10 N.E.2d at 921. Further, "[t]he possession must be exclusive also as against persons other than the owner of legal title; and where the claimant occupies the land in common with third persons, or with the public generally, the possession is not such exclusive possession as will constitute the basis of title." *Philbin, supra,* 75 Ind. App. at 585–86, 129 N.E. at 28.

Snowball argues the Popes failed to meet this standard of exclusivity because the Popes did nothing to exclude the legal owners or others. Specifically, Snowball argues that neighborhood children frequently ice skated on the swamp during the winter months, and in later years pedestrians were allowed to walk across the property on their way to a nearby restaurant. There were no fences and no "no trespassing" signs.

We find Snowball's arguments largely irrelevant to the issue of exclusivity. There is no evidence whatsoever the Popes shared their claim to and possession of the land with any third party or the public in general. Children ice skating and pedestrians taking shortcuts across the property are not, in our view, indications that the Popes intended to share ownership of their property with others; if anything, they are indications of licensure. The trial court correctly found the Popes' possession was exclusive.

C. Open and Visible

"What constitutes open and visible possession has been stated in general terms, thus: it is necessary and sufficient if its nature and character is such as is calculated to apprise the world that the land is occupied and who the occupant is." *Marengo Cave, supra,* 212 Ind. at 631, 10 N.E.2d at 920. It has been said open and visible possession is analogous to unfurling a flag and keeping it waving, so that the owner may know that another has invaded his territory and "planted the standard of conquest." *Id.*

Snowball argues that the Popes' use of the land was not sufficiently open and visible to warrant the judgment rendered. Snowball notes the Popes erected no buildings or fences, and since 1957, when the swamp was filled, did nothing to the land other than perhaps cut the grass.

We agree with the Popes that in determining whether the elements of adverse possession have been met, the character of the land must be considered. *Moore v. Hinkle* (1898), 151 Ind. 343, 345, 50 N.E. 822, 823. "What constitutes possession of a 'wild' land may not constitute possession of a residential lot, just as possession of the latter may not constitute possession of a commercial lot." *McCarty, supra,* at 300.

Our examination of the photographic and testimonial evidence convinces us that the failure to utilize this property for purposes other than a lawn is not fatal to the Popes' claim. First, the land is not spacious enough for much development. Second, the land still lies in a depressed area; when the swamp was filled, it was not filled completely. Neither was it leveled off to make it the same elevation as the surrounding land. In short, it is not well-suited for most uses. We repeat the reasoning espoused in *Folley v. Thomas* (1910), 46 Ind.App. 559, 93 N.E. 181, in which this court held that an adverse possessor of "wild marsh land" need only exert such dominion as the land would permit. We hold the Popes' use of the land was sufficiently open and visible to justify the trial court's determination.

In sum, the Popes presented sufficient evidence of notorious, exclusive, and open and visible possession to satisfy their burden of proof. Snowball's arguments amount to nothing more than a request for us to reweigh the evidence. This, of course, is not within our prerogative. *Marathon Oil Co., supra.*

The judgment of the trial court is affirmed.

RATLIFF, C.J., and ROBERTSON, J., concur.