Donald L. **GARRIOTT**, Larry E. Garriott, Mark D. Garriott, and Dennis L. Garriott, Appellants–Plaintiffs,

v.

Edward L. **PETERS** and Patsy L. Christian, Appellees–Defendants.

No. 24A01–0703–CV–119.

Court of Appeals of Indiana.

Dec. 28, 2007.

Craig D. Doyle, Mark R. Galliher, Kurt V. Laker, Doyle & Friedmeyer, P.C., Indianapolis, IN, Attorneys for Appellants.

Michael D. Wilhelm, Wilhelm Law Office, Brookville, IN, Attorney for Appellees.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Donald, Larry, Mark, and Dennis Garriott appeal the trial court's denial of their motion for summary judgment and its subsequent judgment following trial denying their claim for title by adverse possession and resolving a boundary dispute between them and Edward Peters and Patsy Christian (referred to collectively as "the Appellees"). The Garriotts raise four issues, but we need address only two: whether the trial court improperly denied the Garriotts' motion for summary judgment and whether the trial court erred in finding that the Garriotts failed to prove the elements of their adverse possession claim. Although we conclude the trial court properly denied the Garriotts' motion for summary judgment, we also conclude the trial court improperly found that the Garriotts failed to establish title by adverse possession. We therefore reverse.

### Facts and Procedural History

This case involves a dispute between the Garriotts and the Appellees over a 7.811–acre parcel of real estate located in Franklin County (the "Disputed Tract"). On September 29, 1978, the Garriotts acquired title to a 100.44–acre parcel of land that included the Disputed Tract. The Garriotts recorded the deed to this parcel in the office of the Recorder of Franklin County. On March 22, 1991, the Appellees purchased an 80–acre parcel of land that also included the Disputed Tract, which is located on the west side of the Garriotts' land and the east side of the Appellees' land. The Garriotts' deed shows the boundary line running along Bulltown Road, while the Appellees' deed shows the boundary line running along a section line. It is uncontested that the Disputed Tract

is included in the legal descriptions of both parties' deeds, and that predecessors in title have held deeds that include the Disputed Tract since at least 1836. In the words of both parties, this case presents a "classic overlap."

The parties first became aware of this overlap sometime in either 1995 or 1996, when the Garriotts began cutting timber from the Disputed Tract, and Peters objected, informing the Garriotts that he owned the Disputed Tract. Neither party took legal action at this time. In 2004, Peters and his son began clearing trees, brush, and old fencing from part of the Disputed Tract, and the Garriotts objected.

This dispute resulted in the Garriotts filing a lawsuit claiming the Appellees [1] had trespassed on and damaged the Garriotts' property and seeking an injunction. The Appellees denied the allegations and filed a counter claim to quiet title and for damages. On October 3, 2005, the Garriotts filed a motion for Partial Summary Judgment, seeking to quiet title by adverse possession. The only issue on which the Garriotts did not seek summary judgment was the amount of damages. The Appellees filed a response to this motion and designated evidence. On January 12, 2006, following a hearing, the trial court denied the Garriotts' motion. The trial court's order did not identify the reason for which it denied the motion.

On September 7, 2006, the trial court held a bench trial at which the Garriotts again argued that they had acquired title to the Disputed Tract by adverse possession. On January 8, 2007, the trial court issued its order, along with findings of fact and conclusions of law. In the order, the trial court found the Garriotts had failed to establish the elements of adverse possession. It went on to find the Garriotts' title failed to sufficiently define the western boundary of their property, and that the Garriotts therefore held no title to the Disputed Tract.[2] The trial court therefore quieted title to the Disputed Tract in favor of the Appellees. The Garriotts now appeal.

### Discussion and Decision

#### I. Summary Judgment [3]

■ Summary judgment "should be granted guardedly and should not be used as an abbreviated trial." *Newhouse v. Farmers Nat'l Bank of Shelbyville,* 532 N.E.2d 26, 28 (Ind.Ct.App.1989). A trial court should grant a motion for summary judgment only when the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). The trial court's grant of a motion for summary judgment comes to us cloaked with a presumption of validity. *Rodriguez v. Tech Credit Union Corp.,* 824 N.E.2d 442, 446 (Ind.Ct.App. 2005). However, we review a trial court's grant of summary judgment de novo, construing all facts and making all reasonable inferences from the facts in favor of the non-moving party. *Progressive Ins. Co. v. Bullock,* 841 N.E.2d 238, 240 (Ind.Ct.App. 2006), *trans. denied.* We may affirm the

---

**1.** At the time the Garriotts filed the suit, they named Sharon L. Peters as a defendant. On October 27, 2004, Christian, who was then a co-owner of Peters's property, was substituted for Sharon as a party-defendant.

**2.** The Garriotts also challenge this finding, but we need not address this issue as we

reverse on the Garriotts' adverse possession claim.

**3.** A party may appeal the denial of a motion for summary judgment after the trial court has issued a final judgment. *Keith v. Mendus,* 661 N.E.2d 26, 35 (Ind.Ct.App.1996), *trans. denied.*

trial court's grant of summary judgment upon any basis that the record supports. *Rodriguez*, 824 N.E.2d at 446. However, we examine only those materials designated to the trial court on the motion for summary judgment. *Trietsch v. Circle Design Group, Inc.*, 868 N.E.2d 812, 817 (Ind.Ct.App.2007).

In its brief, the Garriotts "concede that . . . the Trial Court could properly have denied the Garriotts summary judgment as to whether the [Appellees] regained title to the Disputed Tract between 1991 and 2004." Appellant's Brief at 12 n. 3. We agree, and conclude the trial court properly denied the Garriotts' motion for summary judgment, as this court "will affirm the denial of summary judgment if it is sustainable on *any legal theory or basis* found in the evidentiary matter designated to the trial court." *W. Amer. Ins. Co. v. Cates*, 865 N.E.2d 1016, 1020 (Ind.Ct.App. 2007) (emphasis added), *trans. denied.* We therefore need not address the Garriotts' argument that the trial court improperly denied its motion on another basis. *See Villas West II of Willowridge v. McGlothin*, 841 N.E.2d 584, 596–97 (Ind. Ct.App.2006) (declining to address the appellant's argument that the trial court improperly denied a motion for summary judgment on one basis where the denial was sustainable on another basis); *Ramon v. Glenroy Constr. Co., Inc.*, 609 N.E.2d 1123, 1128 (Ind.Ct.App.1993) ("This court is not precluded from affirming a summary judgment where the final result is correct although it may have been rendered upon a different theory than that upon which we sustain it."), *trans. denied.*

The Garriotts claim, however, that the trial court should have granted them partial summary judgment on the issue of whether, by their actions between 1978 and 1991, they acquired title to the Disputed Tract by adverse possession. We recognize that "[a] summary judgment may be rendered upon less than all the issues or claims." T.R. 56(C). However, a party must identify the issues and grounds on which it is seeking summary judgment. *See* T.R. 7(B) ("The motion shall state *the grounds therefor* and the relief or order sought." (emphasis added)); T.R. 56(B) ("When any party has moved for summary judgment, the court may grant summary judgment for any other party *upon the issues raised by the motion.*" (emphasis added)). In their motion for summary judgment, the Garriotts did not indicate that they were seeking summary judgment on the distinct issue of whether they initially acquired title by adverse possession. Instead, the Garriotts stated merely, "There is no material question of fact in this matter as to the issue of the Garriotts' ownership of the real estate at issue by adverse possession." Appellant's Appendix at 27. They likewise did not request at the summary judgment hearing that the trial court grant it summary judgment on the issue of whether they acquired adverse possession by their actions between 1978 and 1991 distinct from the ultimate issue of whether they currently held title to the Disputed Tract. The Garriotts cannot now complain that the trial court failed to enter summary judgment on this specific issue when it failed to request that the trial court do so.[4]

---

4. We recognize that authority exists for the proposition that this court may issue an opinion in effect granting a party partial summary judgment on a particular issue where the party did not specifically request such relief. *See Thiele v. Faygo Beverage, Inc.*, 489 N.E.2d 562, 566 n. 2 (Ind.Ct.App.1986), *trans. denied.* However, in *Thiele*, this court affirmed the trial court's grant of summary judgment as to three counts in the plaintiff's complaint, and reversed the trial court's grant with regard to a fourth count. *See id.* at 588. In this case,

The trial court's denial of the Garriotts' motion for summary judgment did not dispose of any of the issues, but merely left the issues to be decided at trial. *See Turner v. Bd. of Aviation Comm'rs,* 743 N.E.2d 1153, 1164–65 (Ind.Ct.App.2001), *trans. denied.* Therefore, we will address the Garriotts' arguments relating to their acquiring title by adverse possession based on all the evidence before the trial court.

## II. Judgment After Trial

### A. Standard of Review

In this case, the trial court entered findings of fact and conclusions of law sua sponte. In these situations, the trial court's findings "control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings." *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind.1997). When a trial court has entered findings, we employ a two-tiered review, first determining whether the evidence supports the trial court's findings and then determining whether the findings support the trial court's conclusions. *Id.* We will not set aside a finding or the judgment "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Wetherald v. Jackson,* 855 N.E.2d 624, 632 (Ind.Ct.App.2006) (quoting Ind. Trial Rule 52(A)), *trans. denied.* Indeed, "it is not within the province of an appellate court to reweigh the evidence or to reassess the credibility of the witnesses." *Wilfong v. Cessna Corp.,* 838 N.E.2d 403, 407 (Ind. 2005). While we review findings of fact under the clearly erroneous standard, we review de novo a trial court's conclusions of law. *Fobar v. Vonderahe,* 771 N.E.2d 57, 59 (Ind.2002). "Where cases present mixed issues of fact and law, we have

described the review as applying an abuse of discretion standard." *Fraley v. Minger,* 829 N.E.2d 476, 482 (Ind.2005). A finding is clearly erroneous "when the record contains no facts to support them either directly or by inference." *Estate of Reasor v. Putnam County,* 635 N.E.2d 153, 158 (Ind.1994). We will conclude a judgment is clearly erroneous if no evidence supports the findings, the findings fail to support the judgment, or if the trial court applies the incorrect legal standard. *Wetherald,* 855 N.E.2d at 632. "In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made." *Yanoff,* 688 N.E.2d at 1262.

We also note that as the Garriotts bore the burden of proof regarding their claim of adverse possession, they are appealing from a negative judgment. *Nodine v. McNerney,* 833 N.E.2d 57, 65 (Ind.Ct.App. 2005), *clarified on reh'g,* 835 N.E.2d 1041, *trans. denied.* In these situations, "we will reverse the trial court's judgment upon this issue only if the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to a conclusion other than that reached by the trial court." *Id.*

### B. The Trial Court's Findings

■ Before addressing the merits, we note that some of the trial court's "findings of fact" are not true findings, as they merely restate the testimony of witnesses. *See Augspurger v. Hudson,* 802 N.E.2d 503, 515 (Ind.Ct.App.2004) (Sullivan, J., concurring in result) (indicating that recitations of witness testimony are not findings); *In re Adoption of T.J.F.,* 798 N.E.2d 867, 874 (Ind.Ct.App.2003) ("A

---

the issue of whether the Garriotts acquired adverse possession through their actions between 1978 and 1991 is not a separate count,

but merely part of the ultimate issue of the Disputed Tract's ownership.

court or an administrative agency does not find something to be a fact by merely reciting that a witness testified to X, Y, or Z."). This court is fully capable of reading the transcript of witnesses' testimony; "findings" that merely inform this court that witnesses testified as to certain facts do not aid this court in its review. *Cf. Perez v. U.S. Steel Corp.*, 426 N.E.2d 29, 33 (Ind.1981) (indicating that findings that merely restate testimony "are not findings of basic fact in the spirit of the requirement"). Findings of fact are a mechanism by which a trial court completes its function of weighing the evidence and judging witnesses' credibility. Therefore, "the trier of fact must adopt the testimony of the witness before the 'finding' may be considered a finding of fact." *In re T.J.F.*, 798 N.E.2d at 874. When a trial court enters purported findings that merely restate testimony, this court will not "cloak the trial court recitations in the garb of true factual determinations and specific findings as to those facts." *Augspurger*, 802 N.E.2d at 515. Instead, we treat these purported findings as surplusage. *See Perez*, 426 N.E.2d at 33.

## C. Adverse Possession

▆▆ Adverse possession is a manner in which a party may defeat a party holding record title to a parcel of land. *Marengo Cave Co. v. Ross*, 212 Ind. 624, 630, 10 N.E.2d 917, 920 (1937). In order to obtain ownership of a parcel of land through adverse possession, one must establish four elements: [5]

(1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);

(2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");

(3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

(4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Fraley*, 829 N.E.2d at 486.[6] The statutory period for adverse possession is ten years. Ind.Code § 34–11–2–11. Title passes to the claimant at the end of a ten-year period during which all the elements of adverse possession are met. *Fraley*, 829 N.E.2d at 487. The party asserting adverse possession must establish the elements of adverse possession by clear and convincing evidence. *Id.* at 483.

---

**5.** A party must also be in compliance with the adverse possession tax statute, Indiana Code section 32–31–7–1. *Fraley*, 829 N.E.2d at 493. Here, there seems to be no dispute that both parties paid real estate taxes on the Disputed Tract and thus were in compliance with the statute.

**6.** As this court has previously noted, our supreme court identified the elements of ad-

verse possession in *Fraley* " 'to reflect a simplified articulation' of the 'essence of the common law doctrine,' " and that therefore "[t]he reformulation does not appear to affect the vitality of prior case law." *Chickamauga Props., Inc. v. Barnard*, 853 N.E.2d 148, 153 n. 11 (Ind.Ct.App.2006) (quoting *Fraley*, 829 N.E.2d at 486).

▌Central to the disposition of this case is the rule that once a party establishes the elements of adverse possession, "fee simple title to the disputed tract of land is conferred upon the possessor by operation of law, and title is extinguished in the original owner." *Snowball Corp. v. Pope,* 580 N.E.2d 733, 734 (Ind.Ct.App. 1991). Once a party has acquired title through adverse possession, that party does not lose title based on acts committed or circumstances existing after title is established. *See Fraley,* 829 N.E.2d at 487; *Berrey v. Jean,* 401 N.E.2d 102, 106 (Ind. Ct.App.1980) (recognizing that acts of title-holder were "of no matter, since ownership of the land had passed previously to the [adverse holder]"), *overruled on other grounds, Fraley,* 829 N.E.2d 476. Our supreme court explained and applied this rule in *Fraley:*

> Fraley argues that the Mingers' possession was not hostile because Mrs. Minger "openly acknowledged the superior rights of the record title holder by making an inquiry about buying the parcel." Between the time of the death of Truman Belew in 1994 and the deed conveying the disputed tract to Keith Fraley in 1996, Eva Minger inquired about the possible purchase of about half of the tract from Melvin Belew. Fraley's contention that this inquiry disproves the Mingers' adverse possession is erroneous because title by adverse possession passes to the claimant by law at the end of the possessory period. Once title vests in a party at the conclusion of the ten-year possessory period, the title may not be lost, abandoned, or forfeited, even where the party pays rent to the title-holder, agrees to a survey to attempt to find the true boundary line, expresses satisfaction with a survey whose results are inconsistent with the property adversely possessed by him, or states that he does not claim the land and offers to buy it. The ten-year possessory period required for the Mingers' adverse possession clearly expired long before Mrs. Minger's purchase inquiry after 1994 (which may have merely been an effort to avoid litigation), and her inquiry would not undermine any ownership by adverse possession that the Mingers had gained years earlier.

829 N.E.2d at 487 (citations omitted).

▌We generally presume trial courts know and follow the applicable law. *Thurman v. State,* 793 N.E.2d 318, 321 (Ind.Ct. App.2003). "However, this presumption can be overcome if the trial court's findings lead us to conclude that an unjustifiable risk exists that the trial court did not follow the applicable law." *Ramsey v. Ramsey,* 863 N.E.2d 1232, 1239 (Ind.Ct. App.2007); *see Wal–Mart Stores, Inc. v. Bailey,* 808 N.E.2d 1198, 1206 (Ind.Ct.App. 2004) (reversing trial court after examining the language used in the trial court's judgment and concluding that the trial court applied an incorrect legal standard), *trans. denied; cf. Alexander v. State,* 768 N.E.2d 971, 978 (Ind.Ct.App.2002), (although appellate court presumes that trial court follows applicable law, trial court's findings indicated that it failed to do so), *aff'd on reh'g,* 772 N.E.2d 476, *trans. denied.* The trial court's findings and conclusions in this case present this kind of unjustifiable risk that it failed to recognize that the Garriotts could succeed by establishing title by adverse possession during a period preceding the Appellees' purchase of the land.

In this case, the Garriotts seek to establish their adverse possession of the Disputed Tract with acts and circumstances beginning in 1978. If they demonstrate that they satisfied the elements for the requisite ten-year period, the acts and circumstances following this establishment are irrelevant. As the trial court recognized

in its findings,[7] the Garriotts presented evidence that they used the tract between 1978 and 1991 in the following ways: renting a portion of the Disputed Tract to local farmers; selling timber off the real estate in 1985; clearing trails; riding all-terrain vehicles, hunting mushrooms, picking berries, cutting firewood, and hunting. The trial court also concluded, apparently based on these acts, that the Garriotts "were laying claim to the disputed acreage." Appellant's Appendix at 10. However, the trial court's findings of fact also note testimony relating to Peters's actions on the Disputed Tract following his purchase in 1991. As stated above, if the Garriotts acquired title prior to 1991, these actions are irrelevant.

The trial court also found "[t]hat neither party observed the other party do anything substantial to the real estate that would alert anyone that they were laying claim to the real estate." Id. Initially, we note that this finding is clearly erroneous as it is not supported, and instead is directly contradicted, by the undisputed evidence. The parties agree that in 1995 or 1996, Peters observed the Garriotts cutting timber from the Disputed Tract and that the Garriotts commenced this litigation in response the Appellees' actions of clearing brush from the Disputed Tract in 2004. Therefore, both parties clearly observed the other committing substantial acts on the Disputed Tract evidencing both parties' intent to control the Disputed Tract. More importantly to this discussion, this finding indicates that the trial court focused on the actions on the Disputed Tract after 1991, at least three years after the period during which the Garriotts sought to establish adverse possession had run. Whether the Appellees were alerted

to the Garriotts laying claim to the real estate is irrelevant to determining whether the Garriotts established title by adverse possession during the thirteen-year period prior to Peters purchasing the land.

Keeping in mind the risk that the trial court failed to correctly apply the law, we will analyze the four elements of adverse possession to determine whether the trial court's conclusion that the Garriotts failed to meet their burden was an abuse of discretion. See Fraley, 829 N.E.2d at 482 (recognizing that we review mixed issues of fact and law for an abuse of discretion).

### 1. Control

▪▪▪▪ Issues of whether a party had control over a parcel of land "are necessarily decided on a case-by-case basis, for what constitutes possession of one type of property may not constitute possession of another." King v. Wiley, 785 N.E.2d 1102, 1109 (Ind.Ct.App.2003), trans. denied. "What constitutes possession of a 'wild' land may not constitute possession of a residential lot, just as possession of the latter may not constitute possession of a commercial lot." McCarty v. Sheets, 423 N.E.2d 297, 300 (Ind.1981). One claiming adverse possession must demonstrate only "such dominion as the land would permit." Snowball Corp., 580 N.E.2d at 736.

▪▪▪ The Disputed Tract consists mainly of undeveloped wooded area and swampland. Therefore, far less extensive use of the property was required to be shown to establish the control element. See id. The existence of a fence along the edge of the Garriott's claimed boundary of the Disputed Tract constitutes evidence of the Garriotts' control over the Disputed Tract. See Connors v. Augustine, 407 N.E.2d 1186, 1188 (Ind.Ct.App.1980), over-

---

**7.** This "finding" is an example of the trial court merely indicating that the Garriots presented testimony and evidence of these acts and circumstances, and not explicitly adopting this testimony and evidence.

*ruled on other grounds, Fraley,* 829 N.E.2d 476; *Kline v. Kramer,* 179 Ind. App. 592, 596, 386 N.E.2d 982, 988 (1979), *overruled on other grounds, Fraley,* 829 N.E.2d 476. We recognize that Peters introduced evidence that when he bought his land in 1991, he observed merely "remnants of an old fence that had been torn down.... In addition there was an old broken wooded fence that was buried in the mud and rotted out." Appellant's App. at 128. However, Peters did testify that he observed some fencing along the boundary line claimed by the Garriotts when he purchased the property. Transcript at 163. As discussed above, the condition of the fencing as testified to by Peters relates to its condition outside the ten-year period necessary to establish adverse possession. Moreover, that the Garriotts may not have continuously maintained a fence does not negate the fact that there was a fence erected along the Garriotts' claimed boundary line. *Cf. Piles v. Gosman,* 851 N.E.2d 1009, 1016 (Ind.Ct.App.2006) (rejecting the argument that a party must continuously maintain a fence in order to acquire title by adverse possession). We also note that portions of this fence must have been in place for a substantial length of time, as it existed long enough to deteriorate naturally.

Even without evidence of the fencing, significant uncontroverted evidence exists of the Garriotts' use of the land. The Garriotts introduced evidence that in 1985 they accepted bids from loggers to cut timber from the land, including timber from the Disputed Tract, and that timber was removed between 1985 and 1987. They also introduced testimony indicating they had leased portions of the Disputed Tract to farmers, and in 1989 or 1990 began involvement with government conservation programs, which covered portions of the Disputed Tract. The facts that the Garriotts leased part of the Disputed Tract and cut timber from it constitute strong evidence of their control of the Disputed Tract. *See Longabaugh v. Johnson,* 163 Ind.App. 108, 111–12, 321 N.E.2d 865, 868 (Ind.Ct.App.1975). The Garriotts use of the Disputed Tract for riding ATVs, hunting, and picking mushrooms also constitutes evidence of control. *See Fraley,* 829 N.E.2d at 488. Peters also testified that he saw the Garriotts use a portion of the Disputed Tract as an access point to the rest of the Garriotts' property. *Cf. Chickamauga Props.,* 853 N.E.2d at 153–54 (concluding that a party's use of an access road was adverse and ripened into a prescriptive easement).

We recognize that much of the evidence of the Garriotts' use of the Disputed Tract consists of their own testimony. Although the trial court was free to view this testimony with scrutiny, it made no finding as to the Garriotts' credibility, and the Appellees introduced no evidence to controvert the Garriotts' testimony except that of Harvey Crawley, a neighboring property owner, who testified he had never seen the Garriotts on the Disputed Tract. However, as the trial court's findings indicate, Crawley's testimony goes more to the notice element of adverse possession. *See* Appellant's App. at 10 (trial court finding that Crawley testified he did not see anything "that would lead him or anyone else to know that anyone was laying claim to [the Disputed Tract]"). The Garriotts also admitted documentary evidence of the sale of timber from the Disputed Tract between 1985 and 1987 and of government contracts covering a portion of the Disputed Tract. Also, undisputed evidence indicates that a fence existed along the Garriotts' claimed boundary line and that the Garriotts used portions of the Disputed Tract as an access point. Based on this evidence, we conclude that the Garriotts established the element of control. Al-

though the trial court did not make a specific finding on this point, to the extent its ultimate conclusion is to the contrary, such conclusion was an abuse of discretion.

## 2. Intent

The record clearly indicates that both parties believed they were purchasing the Disputed Tract, thereby providing evidence of intent to claim ownership thereof. *See Fraley,* 829 N.E.2d at 488; *cf. Keyser v. Brown,* 80 Ind.App. 504, 138 N.E. 514, 515 (1923) ("Where a party obtains a deed from one of two or more cotenants for the whole estate in lands, and takes possession of the same in pursuance thereof, it will be presumed . . . that in doing so he intended to assert all the rights which his grantor had assumed the authority to invest in him."). The Garriotts presented evidence that they excluded others from using the Disputed Tract, and ejected hunters from the Disputed Tract. *See Herrell v. Casey,* 609 N.E.2d 1145, 1148 (Ind.Ct.App.1993). They also sold timber off the land, *see Fraley,* 829 N.E.2d at 488, and entered into contracts with the government concerning the land. *See Bakemeier v. Bakemeier,* 72 Ind.App. 165, 122 N.E. 681, 683 (1919) (recognizing that party claiming to have acquired title to disputed land had rented portions of the land). Such uses clearly evidence the Garriotts' intent to possess the Disputed Tract. We recognize that Crawley testified that he had been on the Disputed Tract two or three times and had not been ejected. However, the Garriotts did not see Crawley on the Disputed Tract any of these times. The fact that Crawley may have been on the Disputed Tract three times during a thirteen-year period in no substantial way undermines the evidence of the Garriotts' intent to control the Disputed Tract. The trial court seems to have agreed, as it concluded that the Garriotts had been "laying claim" to the Disputed Tract. Appellant's App. at 10.

## 3. Notice

The notice element of adverse possession does not require that the party of title have actual notice. *Herrell,* 609 N.E.2d at 1148. Instead, "[w]hen hostile acts are so manifest and notorious that a reasonable owner should have been aware of them, no further notice is required." *Poole v. Corwin,* 447 N.E.2d 1150, 1152 (Ind.Ct.App.1983). Whether or not certain acts constitute constructive notice generally is a question of fact, but when "evidence is particularly clear . . . constructive notice may be found as a matter of law." *Id.*

Although the trial court did not specifically find that the Garriotts failed to meet the notice element, its findings imply as much. *See* Appellant's App. at 10 (trial court finding that the Appellees did not observe the Garriotts doing anything to the Disputed Tract that would alert the Appellees of the Garriotts' claim and finding that Crawley testified that he did not see anything "that would lead him or anyone else to know that anyone was laying claim to [the Disputed Tract]").

Here, the Garriotts recorded their deed with a legal description covering the Disputed Tract. Therefore, the Appellees' predecessors in title had constructive notice of the Garriotts' claim. *See Sinclair v. Gunzenhauser,* 179 Ind. 78, 98 N.E. 37, 54 (1912) (recognizing that recording a deed describing the property "was in and of itself at least notice to the world of the claim of title"), *modified on reh'g,* 179 Ind. 78, 100 N.E. 376. The Appellees seek to distinguish *Sinclair* by pointing out that their predecessors also held legal title to the Disputed Tract. However, this court has previously addressed a similar situation and has found the facts that a party held legal title and had no actual knowledge of the adverse party's recording im-

material. *See Keyser*, 138 N.E. at 515–16 (appellee's recording of a deed gave appellant, who also held title to the property, constructive knowledge of appellee's intent to claim title to the real estate in its entirety). The erection of the fence along the Garriotts' claimed boundary line also put whoever owned the Appellees' land at the time on notice. *See Piles*, 851 N.E.2d at 1016; *Nodine*, 833 N.E.2d at 67 ("[W]e have repeatedly held that the erection of a fence should alert any reasonable title holder that his property is being adversely claimed."). We conclude that, as a matter of law, the Appellees and their predecessors had notice of the Garriotts' claim. To the extent the trial court concluded to the contrary, such a conclusion is an abuse of discretion.

### 4. Duration

The issue of duration is largely covered in our discussion above of the relevant period during which the Garriotts sought to establish their adverse possession. It is not disputed that the Garriotts purchased their land in 1979, and that the acts discussed above took place during the ten-year period following their purchase. We conclude the Garriotts satisfied the duration element.

■ We recognize the high standard for reversal in cases such as this—where a party appeals from a negative judgment and the trial court entered findings and conclusions. However, as discussed above, the trial court actually found few facts, made at least one clearly erroneous finding, and made no findings explaining its conclusion that the Garriotts did not present sufficient evidence to prove adverse possession. Moreover, the trial court's findings indicate a substantial probability that the trial court misapplied the law by failing to recognize that the Garriotts could succeed by establishing title prior to the time at which Peters purchased his

land. It also appears that the trial court based its conclusion that the Garriotts did not meet their burden of showing adverse possession on their failure to satisfy the notice element. As discussed above, the Garriotts met this element as a matter of law. It is apparent from the record that the only way the trial court could properly have concluded that the Garriotts did not meet this standard is if it wholly disbelieved the Garriotts' unrefuted evidence. Although we recognize that it is the trial court's province to judge witness credibility and weigh conflicting evidence, the trial court in this case had no substantial relevant evidence against which to weigh the Garriotts' evidence establishing adverse possession, and the trial court provided no reason why it did not believe the Garriotts' testimony. If we were to affirm by merely assuming that the trial court found the Garriotts' evidence unbelievable, we would affirm virtually any negative judgment without giving the appealing party's claims any serious consideration. Although the standard for reversing a negative judgment is high, it is not insurmountable, and a party appealing such a judgment is not given the impossible task of refuting the hypothesis that a trial court, for no identified or apparent reason, found uncontroverted evidence incredible. *Cf. Todd Heller, Inc. v. Ind. Dep't of Transp.*, 819 N.E.2d 140, 149 (Ind.Ct.App.2004) (reversing negative judgment where the evidence was without conflict and the reasonable inferences from that evidence led to the conclusion opposite that made by the trial court), *trans. denied.* The Garriotts presented substantial and uncontroverted evidence that they met the elements of adverse possession for a ten-year period. We therefore conclude the trial court's conclusion that they did not satisfy these elements constituted an abuse of discretion.

## Conclusion

Although we conclude the trial court properly denied the Garriotts' motion for summary judgment, we also conclude that the trial court's judgment following trial was clearly erroneous.

Reversed.

KIRSCH, J., and BARNES, J., concur.