## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 02 2018, 7:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of H.W., a Child Alleged to be in Need of Services | May 2, 2018 |
| J.W. (Father) | Court of Appeals Case No. 48A05-1711-JC-2560 |
| *Appellant-Respondent,* | Appeal from the Madison Circuit Court |
| v. | The Honorable G. George Pancol, Judge |
| Indiana Department of Child Services, | Trial Court Cause No. 48C02-1704-JC-206 |
| *Appellee-Petitioner* | |

**Vaidik, Chief Judge.**

[1] J.W. ("Father") appeals the trial court's determination that his daughter, H.W. ("Child"), is a child in need of services (CHINS). Finding no error, we affirm.

[2] The Department of Child Services (DCS) alleged, and the trial court found, that Child is a CHINS under Indiana Code section 31-34-1-1, which provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

On appeal, Father maintains that DCS did not present sufficient evidence to support a CHINS finding under this statute. In his brief, Father acknowledges that this Court, in reviewing the sufficiency of the evidence supporting a CHINS determination, "consider[s] only the evidence in favor of the juvenile court's judgment, along with any reasonable inference[s] arising therefrom." Appellant's Br. p. 6 (citing *J.M. v. Ind. Dep't of Child Servs.*, 72 N.E.3d 519, 523 (Ind. Ct. App. 2017)). After acknowledging this principle, however, Father

goes on to make an argument that focuses almost entirely on evidence that is favorable to **him**. He largely disregards the evidence that supports the trial court's decision, of which there is plenty.

[3] Father is a military veteran with an unfortunate history of substance abuse and mental illness (he has been diagnosed with schizophrenia, PTSD, and social-anxiety disorder). On March 21, 2017, he was granted "emergency custody" of Child, who by that time was fourteen years old.[1] Tr. p. 180. Almost immediately, DCS received two reports regarding Child: the first report "was concerns about [Father's] mental health due to making threats . . . at peers at a school," and the second report "was in regards to [Father's] mental health due to making threats and also [] drug use, such as synthetic cannabis." *Id.* at 28. DCS family case manager (FCM) Ada Gibbs visited Father, who explained that he "was currently looking at possibly moving just because he doesn't like the fact that his roommate may be getting out of jail soon, and [the roommate] sells drugs also." *Id.* at 33. Oral fluid collected from Father on March 31 tested positive for cocaine and synthetic cannabinoids.

[4] The month that followed was marked by significant instability. On April 7, Father and Child moved into a hotel because Father's roommate had been selling drugs around Child. On April 10, Father surprised FCM Gibbs with news that he and Child had moved to Tennessee (where Father said he had

---

[1] The parties do not tell us what the custody arrangement was before that date. We do know that Child's mother, who is not involved in this appeal, has acknowledged that Child is a CHINS.

relatives). Father explained that he would be returning to Indianapolis soon to get more medication (apparently for PTSD) but that he was currently out of medication and that he is "usually off his rocker" when he is not being medicated. *Id*. at 36. While in Tennessee, Father was contacted by the Tennessee Department of Child Services (which had been notified of his involvement with DCS in Indiana), but he didn't participate in any services. On April 27, Father told FCM Gibbs that he and Child had moved back to Indiana "because he was being harassed by Tennessee, and Tennessee was threatening to take [Child] away from him if he did not seek drug [] treatment." *Id*. at 39. Father said that he "left [Child] with his mother until he could find a place to stay." *Id*. He added that "if he finds out that [DCS] was trying to take [Child] from him, or have any type of involvement with [Child], he would take [Child] and run away and [DCS] would never fu**ing hear from him again[.]" *Id*. at 40. Father would not say where he was staying, and when FCM Gibbs asked him if she could meet with him and his mother to establish a safety plan for Child, Father "became irate and hung up the phone." *Id*.

[5] A few days later, on May 1, DCS filed its petition alleging that Child is a CHINS. The fact-finding hearing began on June 20. Father went to the courthouse but left before the hearing started. The judge personally observed Father and noted that he was "highly agitated and belligerent. His statements were reminiscent of a type of paranoia." Appellant's App. Vol. II p. 34. That day the court heard testimony from two DCS case managers and a case manager from Tennessee. The hearing resumed on August 1. Father attended,

but he was "fidgety and jittery" and "was almost constantly in motion." *Id*. at 32. The court heard testimony from a third DCS case manager, two therapists who had seen Child, a visitation supervisor, Father's mother, and Father himself. DCS also introduced more than 700 pages of Father's VA medical records as an exhibit.

[6] The evidence presented at the hearing revealed that Father was "erratic," "irrational," and "hostile" in interactions with DCS, *see* Tr. p. 212, including hanging up the phone, threatening to sue, swearing, and refusing to do a drug screen. He again tested positive for synthetic cannabinoids a month into the CHINS case. At the time of the fact-finding hearing, Father was not participating in any services recommended by DCS, including therapy and visitation with Child. When told not to talk to Child about the case, he said that he was "going to fu\*\*ing talk about the case if I want to with my daughter." *Id*. at 133-34. Father repeatedly talked about working as an informant for the FBI and the ATF, but he didn't present any evidence to verify that claim (there is evidence that this is a delusion, *see* DCS Ex. E, p. 307). He testified that he had purchased a house in Anderson, but he had refused to let DCS see it, and he admitted that it did not have working utilities.

[7] Finally, and perhaps most significantly, there is abundant evidence that Child, a teenager, has serious mental-health issues of her own—depression, anxiety, talk of suicide and other self-harm, ADHD, and possible autism—that Father was not adequately addressing. Father acknowledged that he had been unable to get Child the services she needs but blamed it on DCS "bothering" him so

much. Tr. p. 37. While in Tennessee, Father told the Tennessee case manager that Child has mental-health issues but that "it was none of [the case manager's] business." *Id.* at 68.

[8] The Indiana Supreme Court has held that we should reverse a CHINS determination "only if it was clearly erroneous." *In re D.J.*, 68 N.E.2d 574, 578 (Ind. 2017). In light of the compelling evidence detailed above—much of which Father ignores on appeal—we cannot say that the trial court committed clear err by concluding that Child is a CHINS under Indiana Code section 31-34-1-1.[2]

[9] Affirmed.

Barnes, J, and Pyle, J., concur.

---

[2] While we affirm the trial court's ultimate decision, we note that much of its Findings and Order consists of a witness-by-witness rundown of the testimony given at the fact-finding hearing. Father does not challenge the decision on this basis, but we remind the trial court that the mere recitation of witness testimony is not a "finding of fact." *Garriott v. Peters*, 878 N.E.2d 431, 438 (Ind. Ct. App. 2007), *trans. denied*; *Augspurger v. Hudson*, 802 N.E.2d 503, 515 (Ind. Ct. App. 2004) (Sullivan, J., concurring in result).