GIBSON *v.* BERNSTEIN ET AL.

[No. 10,206. Filed March 9, 1920.]

1.  ADVERSE POSSESSION.—*Unproductive Lands.*—*Running of Statute of Limitations.*—Where land sold at a tax sale was not capable of practical cultivation and could not be used profitably for any purpose, and was without buildings or fences, the purchaser, by immediately going upon the land after receiving the tax deed, locating the corner stones and stakes by the aid of a map, and by visiting the land and claiming ownership thereof, and exercising all acts of possession, control and ownership of which the land was susceptible, as fully and completely as other landowners in the neighborhood exercised over like lands, had sufficient adverse possession to start the running of the statute of limitations. p. 689.

2.  LIMITATION OF ACTIONS.—*Sale of Land for Nonpayment of Taxes.*—*Action for Redemption.*—*Limitation.*—*Statute.*—Where the pur-

chaser of land sold for delinquent taxes and his successor in interest were in adverse possession of the land under claim and color of title for a period of seventeen years, an action to redeem from the tax sale was barred under §296 Burns 1914, §294 R. S. 1881, providing that all actions not limited by any other statute shall be brought within fifteen years. p. 689.

3. TAXATION.—*Sale of Land for Nonpayment of Taxes.—Action for Redemption.—Laches.—Estoppel.*—Where no attempt was made to redeem land sold for the nonpayment of taxes until seventeen years thereafter, and not until the land was rapidly advancing in value, though during such time delinquent taxpayer's grantee had full knowledge that the land was in the adverse possession of the purchaser, and that the purchaser was making valuable improvements thereon, and where no steps were taken to reimburse the purchaser or his successor in interest for the improvements, the delinquent taxpayer's grantee was estopped by *laches* from maintaining an action to redeem. p. 690.

From Lake Circuit Court; *W. C. McMahan,* Judge.

Action by William Gibson against Max Bernstein and others.

From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Pattee & Johnson* and *Woolen, Cox & Welliver,* for appellant.

*W. J. Whinery* and *Gavit & Hall,* for appellees.

NICHOLS, C. J.—This action was originally by Kate K. Montgomery against appellees, and was commenced January 31, 1914, to quiet title to, and for possession of, certain real estate. Afterward, to wit, on February 17, 1915, she filed an amended complaint to redeem from the tax sale of such real estate. To this amended complaint the appellees answered in six paragraphs, the first being a general denial, the second alleging the fifteen-year statute of limitations;

the third alleging that said Kate K. Montgomery was not the real party in interest; the fourth paragraph alleging the two-year statute of limitations under §10366 Burns 1914, Acts 1891 p. 199, §192; the fifth paragraph alleging in shorter form than the second the fifteen-year statute of limitations; the sixth paragraph alleging estopped by *laches* of appellant. After ward a supplemental complaint was filed by appellant averring that the original plaintiff, Kate K. Montgomery, had conveyed the real estate involved to appellant by quit-claim deed dated February 29, 1916, and that appellant became thereby, and was at the time of filing said supplemental complaint, the owner of said real estate. There was a reply in general denial to the special answers, the cause was submitted to the court for trial, and a special finding of facts and conclusions of law were stated in favor of appellees, and judgment was rendered accordingly. There was a motion for a new trial, which was overruled, and now this appeal. The only errors assigned are that the court erred in its conclusions of law, and that the court erred in overruling appellant's motion for a new trial. The only questions presented which we need to consider are the statute of limitations and the *laches* of appellant.

Such facts as are necessary for our decision are as follows: On February 13, 1893, at a regular tax sale by the county treasurer of Lake county, Indiana, for the sale of lands for delinquent taxes, one Armanis F. Knotts purchased the real estate involved in this controversy. At said time said real estate was sold in the name of Mary Somers. Thereafter, to wit, April 26, 1897, the auditor of said county executed and delivered to said Knotts a tax deed for said real

estate, which deed was duly recorded December 17, 1897, in the deed records of the recorder's office of said county. On June 14, 1907, said Knotts and wife conveyed by warranty deed said real estate to appellee Bernstein, which deed was duly recorded in the deed records of the recorder's office of said county, June 25, 1907. Thereafter, to wit, January 6, 1909, said appellee Bernstein and wife mortgaged said real estate to appellee Bank of Whiting, to secure a note for $3,693.90, and again, on June 11, 1915, mortgaged said real estate to said appellee Bank of Whiting to secure a note of $1,250. On March 29, 1909, said appellee Bernstein mortgaged said real estate to appellee Manhattan Brewing Company to secure a note of $1,200. Said Mary Somers never paid any taxes upon said real estate, but permitted the same to become delinquent and by reason of such delinquency the same was purchased by said Knotts as aforesaid. Immediately after receiving the said tax deed the said Knotts went from his home in Hammond, Lake county, Indiana, to said real estate, which was located in the village of Tolleston, entered upon the same, located it, and looked up and found the corner stones and stakes by the aid of a map of the territory, which stakes had been previously set to mark the corners of said lot. Such lot was located in a low place in the sandy prairie, the soil of which consisted of black muck on top and sandy subsoil. Said lot was not capable of practical cultivation, and was the same as all the other lands around about there, none of which could be profitably used at the time for any purpose. No part of said land or the lands near said lot was capable of practical cultivation and was not used by any one for farming purposes, but was open, un-

productive land without timber.    There    were    no
buildings or fences thereon.    Said Knotts was unable
to use said lot for any useful purpose, but he con-
tinued to visit the same every once in a while after
the winters of 1897 and 1898 until the year 1906, when
he had said lot surveyed and the corners thereof
restaked and established.    During all the time from
1897 to 1906 said Knotts claimed and declared that
he was the owner of said lot, and exercised all of
the acts of possession, control and ownership over
the same during said period of which said land was
susceptible as fully and completely as other owners
of like lands in that neighborhood exercised respect-
ing the same during said period, and exercised all
the control and ownership over said land that could
reasonably be expected to be exercised over the same
in view of the condition and adaptability and char-
acter thereof, all of which was to the exclusion of
every other person during said period.    No other
person during any part of said time made any claim
to said lot or exercised any dominion over it.    In
1906, when said Knott caused said land to be sur-
veyed and restaked as aforesaid, he took actual pos-
session of the same, and continued in exclusive pos-
session thereof until he sold it to appellee Bernstein,
who took actual possession of said lot, and began the
erection of improvements thereon, and thereafter
continuously, openly and notoriously continued in
possession of said lot claiming to be the owner to the
exclusion of all other-persons.    Said Bernstein exer-
cised such acts of dominion, control and ownership
over said real estate as fully and completely as other
owners of like lands exercised respecting the same, all
of which was open, notorious and visible, to the exclu-

sion of every other person. At the time of the purchase at said tax sale of said real estate it was not worth to exceed $3 to $5, and continued to be about such value until 1906, when the value thereof began to rise rapidly owing to the industrial developments in that locality caused by the location of the city of Gary. Appellee Bernstein paid said Knotts $600 for said real estate. Soon thereafter said Bernstein began the erection of a two-story building on said lot and completed the same in 1907. Thereafter he excavated and put in a basement wider and longer than the said building erected thereon for the purpose of building a brick building thereon. The cost of such building and basement was $10,000. Bernstein also improved said real estate by constructing a cement sidewalk seventeen feet wide in front thereof and by making necessary water, sewer, gas and light connections. At the time of the commencement of this action by said Kate K. Montgomery, the improvements on said real estate were worth $8,000 and the lot $2,000 and at the time of the trial the lot was worth $3,500. Said appellee Bernstein had no abstract for said real estate, and he believed that he had a good title thereto. He made no investigation of the records relying upon the statement of said Knotts. Said Kate K. Montgomery paid nothing for said real estate, but appellant had paid a valuable consideration therefor by exchanging properties with the grantor who conveyed the same to said Kate K. Montgomery. Said Mary Somers was a nonresident of the State of Indiana and never was in possession of said real estate. Said Kate K. Montgomery and appellant also were nonresidents and neither of them was ever in possession of said real estate. Appellant

is a lawyer by occupation, was living in the city of Chicago within twenty-five miles of the city of Gary, and had been engaged in the practice of law in the city of Chicago for thirty years. He was familiar with the locality and growth of the region in and about the present city of Gary. Before the conveyance to Kate K. Montgomery, appellant had investigated the title to said real estate and knew that the same had been sold for taxes to said Knotts, and that said Knotts had conveyed it to said Bernstein by warranty deed, and that Bernstein was in possession of said real estate, and had made valuable and lasting improvements thereon in good faith. Knowing such facts, appellant caused a quitclaim deed to be made to said Kate K. Montgomery, and caused said litigation to be made in her name, and to be carried on for a number of years without making any effort to redeem or to reimburse said Bernstein for his outlay of taxes, special assessments and improvements, and concealed from said Bernstein that he was the real party in interest by having suits brought in the name of said Kate K. Montgomery. Appellant had never paid any taxes or special assessments on said real estate, and had never tendered or offered to appellee Bernstein any sum of money whatever in payment of the taxes or special assessments and improvements which said Bernstein and his predecessor Knotts had paid out on said real estate. The said Kate K. Montgomery's grantor also lived in the city of Chicago, and knew, or by the exercise of ordinary diligence could have known, of the condition of the title to said real estate and the fact that said Bernstein was improving the same, believing he was the owner thereof in good faith. Said Kate K. Montgomery formerly

lived in Chicago, and could by the exercise of ordinary diligence have learned each and all of the said facts set forth and the location and situation of said real estate. None of said parties had made any effort to redeem said real estate or any part thereof, or to pay any taxes that were assessed for any purpose thereon. The growth of the city of Gary had been a matter of common knowledge, well known to each and all of said parties, especially to appellant. Appellant and said Kate K. Montgomery were each guilty of *laches* because of their failure to offer to redeem said land when they knew, or by the exercise of ordinary care and diligence could have known, that appellee Bernstein in good faith had purchased said real estate for a valuable consideration and was placing valuable improvements thereon, and it would now be inequitable and unjust for appellant to assert any right, title, claim, or interest in or to said real estate, and by his conduct with the knowledge of the facts he should now be barred and estopped from asserting any right, claim, or demand against said real estate. He had been able to find out the rights of appellee Bernstein and the other appellees in said property, but wholly failed and neglected so to do, and failed to notify appellees, or any of them, of his desire to redeem said land, or any part thereof, from said tax sale until February 17, 1915. By reason of the improvements made by said appellee Bernstein, the same is now greatly increased in value, and appellant had until the commencement of this action knowingly permitted appellee Bernstein to go on making improvements on said real estate, paying the current taxes and assessments on the same without making

any effort, or giving any notice to him of his desire or intention to redeem said lands, or any part thereof, from said tax sale.

It is to be observed that the court, after stating the different, specific possessory acts of said Knotts from the year 1897 to the year 1907, makes a blanket finding that said Knotts exercised all acts of possession and control and ownership over such real estate during said period of which said land was susceptible, as fully and completely as other owners of like lands in said neighborhood exercised respecting the same during said period, and exercised all the control and ownership over said lands that could reasonably be expected to be exercised over the same, in view of the condition, character and adaptability of said lands, all of which to the exclusion of every other person during the said period, who made no claim to said lot or exercised any dominion over it. Such a possession and exercise of dominion upon the part of the said Knotts was a sufficient adverse possession of said real estate to start the running of the statute. *Worthley* v. *Burbanks* (1897), 146 Ind. 534, 45 N. E. 779.

The acts of ownership commenced at the time that the said Knotts received his deed, which was April 26, 1897, and continued, so far as Knotts was concerned, until the year 1907, at which time the property was transferred to appellee Bernstein, and from that time until the action was commenced by the said Kate K. Montgomery, to wit, January 31, 1914, or rather until she filed her amended complaint which was on February 17, 1915. Said appellee Bernstein and his grantor were in adverse possession of said real estate under claim and color

of title.  The statute then had been running seventeen years, or two years longer than was necessary to bar this action.  We must hold that the action of William Gibson, commenced in the name of Kate K. Montgomery, who was holding the title for him, was commenced too late under §296 Burns 1914, §294 R. S. 1881, and that it cannot be maintained.

Irrespective of the statute of limitations, appellant must be denied relief against the sale under the facts stated above, under the rule of estoppel by 3.   *laches.*   There was no attempt upon his part, or upon the part of his successive grantors, to take any steps for the redemption of the real estate until it became apparent, because of the location of the city of Gary, that said real estate was rapidly advancing in value; and then no step was taken manifesting the purpose or intention to reimburse appellee Bernstein, or appellees who held mortgage liens against the real estate involved, for their expenditures, and no action was brought to redeem the real estate from such tax sale with any offer to reimburse the purchaser of his grantee until the filing of the amended complaint by appellant's grantor Kate K. Montgomery on February 17, 1915.   Appellant is not in a position to appeal to the equity side of the court, having purchased the real estate involved with full knowledge of the fact that it was in the adverse possession of another who had purchased it in good faith, and had made valuable improvements thereon, and at the time of appellant's purchase he knew that the title thereto was in controversy.

The judgment is affirmed.

McMahan, J., not participating.