**E. W. BERREY and Elberta Berrey, Appellants (Defendants Below),**

v.

**William D. JEAN and Harlan D. Jean for themselves and the Williams Cemetery Association, Appellees (Plaintiffs Below).**

No. 1–979A247.

Court of Appeals of Indiana, First District.

March 13, 1980.

motion to correct errors. Consequently, it is waived. *Stevenson v. Stevenson* (1977), Ind. App., 364 N.E.2d 161.

Richard W. Lorenz, Hickam & Hickam, Spencer, for appellants.

Charles W. Edwards, Spencer, for appellees.

ROBERTSON, Presiding Judge.

E. W. and Elberta Berrey (Berreys) appeal an adverse ruling in a quiet title action initiated by William D. Jean and Harlan D. Jean, for themselves and the Williams Cemetery Association (hereinafter collectively referred to as Cemetery Association). The real estate in question is a cemetery; the issue at trial concerned its dimensions.

We affirm.

Facts supportive of the judgment are as follows: Systematic burial in the area known as Williams Cemetery, in Jefferson Township, Owen County, Indiana, commenced sometime prior to 1880. Articles of Association of the Williams Cemetery Association were prepared and signed in 1908 but were never recorded. In 1939, a plat of the cemetery was placed in the office of the Veteran's Service Officer of Owen County. The most recent interment occurred in 1969, and there exist gravestones in place for persons still living who desire to be buried there. In the winter of 1977–78 the Cemetery Association was revived, a trust fund was established for the maintenance of the cemetery at a local bank, and a trustee was appointed to care for the grounds.

Lifetime residents and persons long familiar with the area testified at the trial that the cemetery had long been known in

the community as Williams Cemetery; that four concrete corner posts defining the perimeter of the cemetery had existed for some sixty years; and that fencing which had once been in place on all four sides connecting the posts, has remained on three sides for some thirty-three years. The unfenced side of the cemetery is bordered by a highway and an access to the cemetery over the Berreys' property has been utilized for approximately forty-five years.

Part of the cemetery land is on a slope, and the existing gravestones are located at the top of the hill. The sloping portion of the land is as yet unencumbered by burial sites. The Berreys purchased acreage surrounding the cemetery in 1975. Prior to their purchase, they secured a title opinion which did not reflect the existence of the cemetery on the property.

In 1978, the Cemetery Association commenced an action to quiet title to the property. The Berreys stipulated the existence of the cemetery, and that the cemetery should be allowed access over the Berreys' property. The contested issue at trial concerned the extent of the cemetery property. The Berreys argued that the boundaries should be restricted to the area encompassing the observable gravesites with a ten-foot perimeter, while the Cemetery Association claimed that the entire area as defined by the cornerposts and fencing belonged to the Association.

Judgment was entered for the Cemetery Association. The trial court ordered a survey to be made of the area so defined, and quieted title in the Cemetery Association to that property. Further, the trial court ordered a survey made of the access lane, and awarded an easement thereover in favor of the Cemetery Association.

The first issue raised by the Berreys is whether the trial court's finding of adverse possession by the cemetery to the entire tract of land, as defined by the cornerposts and fence, was supported by sufficient evidence. The Berreys base this contention upon three grounds. First, the Berreys claim that they had no notice, either actual or constructive, of the cemetery's use of the land to the extent reflected by the trial court's finding. Second, they urge that the cemetery failed to prove adverse possession in the absence of a showing that it paid taxes on the land as required by Ind.Code 32–1–20–1. Finally, the Berreys contend that the finding of adverse possession was error in that the cemetery made no physical use of the disputed land, that the cement posts and fence were installed not to enclose the cemetery but to control the movement of livestock, and that the Berreys had exercised dominion and control over the contested tract by mowing the grass and repairing a portion of the fence.

When the sufficiency of the evidence is questioned on appeal, the reviewing court will not weigh the evidence but will consider only that evidence most favorable to the appellee together with the reasonable inferences to be drawn therefrom. *Jones v. Abriani*, (1976) Ind.App., 350 N.E.2d 635. The judgment of the trial court must be upheld if it can be sustained on any legal theory which the evidence supports. *Tarrant v. Self*, (1979) Ind.App., 387 N.E.2d 1349.

The relevant portion of the trial court's judgment reads as follows:

"The Court further finds that Williams Cemetery as fenced and indicated by said corner posts has been in open and visible use, known in that general area as Williams Cemetery, and occupied as such for approximately 100 years."

As we interpret the judgment of the trial court, title to the disputed land was found to have passed to the cemetery by adverse possession at some point in time prior to the purchase of the record title thereto by the Berreys in 1975. In order to establish title by adverse possession, the Cemetery Association had to show that its possession thereof was actual, visible, open and notorious, exclusive, under claim of ownership, hostile, and continuous for the statutory period. *Penn Central Transportation Co. v. Martin*, (1976) Ind.App., 353 N.E.2d 474. The present statutory period for adverse possession is ten years. Ind.

Code 34–1–2–2. Proor to 1951, however, an action to recover possession of realty had to have commenced within twenty years. § 2–602, Burns 1933. The judgment is silent as to the precise date the adverse possession began; it may reasonably be inferred from the facts, that such possession commenced prior to 1965 and that the statutory period had expired. The Berreys offered no evidence at trial, nor do they contend on appeal, that the relationship between the cemetery and the previous owner or owners of the land was of such a nature to render a finding of adverse possession improper. The record contains evidence that: the cemetery began operating sometime before 1880; the corner posts had been in place for sixty years or longer; the fencing had at one time enclosed the entire disputed tract, and has existed around three sides thereof for some thirty-three years. Two long-time residents testified that the cemetery boundaries, as defined by the posts and fences, had not changed in as long as they could remember. There is no evidence in the record to show that the property had ever been used for a different purpose. From the foregoing we may infer that title was found to have vested in the cemetery by adverse possession. This occurred well before the Berreys purchased the record title to the property.

■ The Berreys insist that they lacked notice of the cemetery's claim to the disputed land. They argue that constructive notice may not be imputed to them because there is nothing in the chain of title reflecting the cemetery's occupation of the property. They urge that the extent of their actual notice of the cemetery's possession was restricted to the area of land at the top of the hill actually covered by the monuments. We do not consider notice to be an issue relevant to this cause. Notice would be a proper issue were it the case that the cemetery possessed the land adversely to the Berreys during the period of the statute of limitations. Inasmuch as we understand the trial court's judgment as having found title passing to the cemetery at a point in time prior to the Berreys' purchase of the record title, the notice argument is unavailing.

■ Next, the Berreys contend that title to the disputed land could not have properly passed to the cemetery because the latter failed to show any evidence of its having paid taxes thereon. I.C. 32–1–20–1 would seem, on its face, to require such payment:

"Hereafter in any suit to establish title to lands or real estate no possession thereof shall be deemed adverse to the owner in such manner as to establish title or rights in and to such land or real estate unless such adverse possessor or claimant shall have paid and discharged all taxes and special assessments of every nature falling due on such land or real estate during the period he claims to have possessed the same adversely: Provided, however, That nothing in this act shall relieve any adverse possessor or claimant from proving all the elements of title by adverse possession now required by law."

Cases construing this section, however, have not demanded its rigid application in all situations. In *Echterling v. Kalvaitis,* (1955) 235 Ind. 141, 126 N.E.2d 573, our supreme court stated that the intent of the legislature in enacting the statute was "to halt the pernicious effect of squatters upon lands where title holders had paid taxes on lands owned by them, but where possession of part of the land was usurped by squatters for long years without claim of title or payment of taxes." Further, the court stated, "The act . . . must be construed as being supplemental to the statute of limitations, and not as superseding it." The tax requirement is a means of giving notice to the record title holder that someone else is claiming his land. *Kline v. Kramer,* (1979) Ind.App., 386 N.E.2d 982. *See also,* Neu, James H., *Adverse Possession in Indiana,* 16 Notre Dame Lawyer 216 (1941). Inasmuch as we have determined that notice is not in issue due to the property having passed to the cemetery prior to its acquisition by the Berreys, this contention fails to constitute error.

■ The Berreys argue that the finding of adverse possession was in error because

the cemetery made no physical use of the disputed land. We understand this contention to mean that the cemetery failed to prove actual possession, an element of adverse possession. Actual possession has been held to be satisfied if the claimant's possession consists of use to which the land by its nature is suited. *Gibson v. Bernstein*, (1920) 72 Ind.App. 681, 126 N.E. 491. The Berreys offered no evidence, other than their counsel's allegation in his opening statement, that the slope of the contested property rendered it unfit for use as a cemetery. Clearly, a cemetery, unless it is full, by its nature requires open space in which to accommodate future burials. The record contains evidence that the cemetery has not been abandoned and that future use is anticipated. Therefore, there is no error here.

The Berreys contend that the corner posts and fencing were not installed to enclose the cemetery, but rather to control the movement of livestock between adjoining fields and pastures. Inasmuch as this is a factual question, we will not pass on the question nor weigh the conflicting evidence. We will sustain the finding if there is sufficient evidence to support it. *Irons v. Irons*, (1961) 242 Ind. 504, 178 N.E.2d 156. Evidence at the trial tending to support the finding included testimony of persons familiar with the area to the effect that the posts were long considered by members of the community as indicating the boundaries of the cemetery.

Finally, the fact that the Berreys exercised dominion and control over the disputed land by performing certain acts of maintenance thereto is of no matter, since ownership of the land had passed previously to the cemetery.

The Berreys' second principal allegation of error is that they were denied due process of law by the timing and manner in which the trial court, *sua sponte*, visited the contested property on the eve of trial. The fact of the viewing was revealed by the court in remarks preceding the judgment.

In their argument, the Berreys contend that it is possible that the trial court based its judgment on information gleaned from the visit that was not evidence entered in the record at trial. In relying on such "information," they contend, the court, as trier of fact, became a witness to the action and was not subject to cross-examination, thereby depriving the Berreys of that right.

We are not persuaded that the timing of the court's visit unduly prejudiced the Berreys. We may infer that the trial court anticipated that due to the nature of the case, the evidence that would be before it might consist of abstract representations, such as plats and diagrams, as well as verbal descriptions of real property. It was not unreasonable for the court to examine the property so as to be able to form a mental picture of the cemetery area for purposes of understanding the evidence as it came in.

As the basis of their contention that the trial court relied on extra-judicial information in forming its judgment, the Berreys directed us to a remark made by the trial court:

". . . then frankly, so that I can understand this case better, I went out and walked over the Cemetery last night so that I would be able to understand the evidence better when it came in. It is absolutely inconceivable to me that anyone could have viewed that property now or three years ago and not recognized that the Cemetery is included within well defined boundaries as delineated by cement posts, which are different than any other posts around there."

Our examination of the record compels us to agree with the Berreys that there is no evidence tending to establish a qualitative difference between the corner posts found to delineate the cemetery boundary and other posts on the Berrey property.

The right of the trial court to view the contested premises, and the limitations imposed thereon, is grounded in case law. The trial court has an inherent right to view the premises in controversy for the purpose of enabling it to more clearly understand the evidence at trial, but to *base* its judgment on information obtained by

such extra-judicial inquiry that is not otherwise contained in the record as evidence constitutes reversible error. *DeArmond v. Carter*, (1956) 127 Ind.App. 34, 134 N.E.2d 239; *Yeager and Sullivan v. O'Neill*, (1975) 163 Ind.App. 466, 324 N.E.2d 846. The Berreys cite IC 34–1–21–3, the statute regulating the viewing of property and place by a jury, presumably to define the proper scope of such examination by the trier of fact. Since the trial was before the court without a jury, consideration of that statute is inapposite.

■■■ When the action under review was tried before the court without a jury, we are obliged to indulge in certain presumptions favoring the trial court's actions. Included among these is the presumption that the trial judge considered only properly admissible evidence in reaching its decision and disregarded any improper evidence. *In re Adoption of Thornton*, (1976) Ind.App., 358 N.E.2d 157. The situation before us is not unlike the situation where a trial court

has admitted inadmissible evidence. In that case we may presume that the court did not consider such evidence where there exists other competent evidence from which the court could reach its decision. *In re Adoption of Dove*, (1977) Ind.App., 368 N.E.2d 6, *reh den.*, 371 N.E.2d 387. We have found sufficient competent evidence, independent of the trial court's extra-judicial observation, to support the trial court's judgment. There is no error here.

Finding no reversible error in the issues presented for our consideration, we affirm the judgment of the trial court.

Judgment affirmed.

NEAL and RATLIFF, JJ., concur.