

**FILED**

Jun 04 2015, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Travis Bonnell
Bonnell Group
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Jim Brugh
Logansport, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tom Bonnell,<br><br>*Appellant-Defendant,*<br><br>    v.<br><br>Ruby A. Cotner,<br>Douglas Wayne Cotner,<br>Arthur J. Johnson, Jimmy J.<br>Johnson, and Jerry L. Johnson,<br><br>*Appellees-Plaintiffs.* | June 4, 2015<br><br>Court of Appeals Case No.<br>66A03-1410-PL-372<br><br>Appeal from the Pulaski Circuit<br>Court<br><br>The Honorable Patrick Blankenship,<br>Special Judge<br><br>Cause No. 66C01-1208-PL-11 |

**Najam, Judge.**

## Statement of the Case

Tom Bonnell appeals the trial court's entry of judgment, following a bench trial, in favor of Ruby A. Cotner, Douglas Wayne Cotner, Arthur J. Johnson, Jimmy J. Johnson, and Jerry L. Johnson (collectively, "the Cotners"). Bonnell raises one issue on appeal, and the Cotners raise one issue on cross-appeal. The

Cotners' issue on cross-appeal is both dispositive and an issue of first impression: whether adverse holders of real property can be divested of their title by a subsequent tax sale of the property when the adverse holders' title is premised on a reasonable and good faith—albeit mistaken—belief that they are paying the proper taxes on the property. On these facts, we hold that the subsequent tax sales did not divest the adverse holders of their title to the real property. As such, we reverse the trial court's judgment for Bonnell and remand with instructions for the court to enter judgment for the Cotners.

## Facts and Procedural History

At all times relevant to this appeal, the Cotners or their predecessors-in-interest held title to Parcel 8 and Parcel 9 of the Cottingham subdivision in Pulaski County. That subdivision consisted of several numbered, rectangular parcels. Parcels 3 through 11 shared State Highway 119 as their western border; they were equal in their east-west lengths; and they were consecutively platted south to north such that the northern border of each numbered parcel was the southern border of the next-highest-numbered parcel. About thirty-five feet east of each parcel's eastern border lay an "ancient farm fence" that ran south-north. Appellant's App. at 14. The total area between the parcels' eastern borders and the farm fence was about .75 acres.

The Cotners and other property owners in the subdivision believed that the farm fence marked the eastern boundary of Parcels 3 through 11. Accordingly, in 1968 the owners of Parcel 8 built an outbuilding on the eastern end of their parcel. The outbuilding lay at least in part in the area between their eastern

border and the farm fence. In 2010, the Cotners built an extension to the eastern side of the outbuilding such that, in total, it extended about twenty-two feet past their eastern border.

[4] In 1993, the Pulaski County Auditor issued a tax sale deed to the .75 acres to a third party following a tax sale. On October 4, 2011, the Pulaski County Auditor again put the .75 acres up for tax sale; this time the Pulaski County Board of Commissioners ("the Board") obtained the tax sale certificate. The Board thereafter petitioned the Pulaski Circuit Court for the issuance of a tax sale deed, which the Board received.[1] *See* Pl.'s Ex. G at 6.

[5] On January 10, 2012, the Board conveyed title to the .75 acres to Bonnell via quitclaim deed, which Bonnell recorded. Bonnell believed that he had purchased the .75 acres east of the farm fence; however, after his purchase Bonnell had the area surveyed, at which time he learned that he had purchased the .75 acres between the subdivision parcels and the farm fence. Bonnell likewise learned of the encroachments onto the land from that survey.

[6] Bonnell contacted the owners of Parcels 3 through 11 and offered to divide the .75 acres to allow each parcel to extend to the farm fence. All owners except the Cotners, who owned Parcel 8 and Parcel 9, agreed. The Cotners instead filed suit and claimed that they held title by adverse possession to the land from

---

[1] In their brief, the Cotners erroneously assert that the Board—and by extension Bonnell—"never took ti[t]le[] but merely held certificates of sale . . . ." Appellees' Br. at 22.

their parcels' eastern borders to the farm fence ("the disputed area").[2] Bonnell counterclaimed for ejectment.

On November 1, 2013, the trial court held a bench trial on the parties' claims. Almost a year later, on September 26, 2014, the court entered its findings of fact and conclusions thereon. In relevant part, the court found:

> 9. That the Cotners and their predecessors in title have used, possessed, and controlled their parcels of land as those parcels appear in the Sub-Division plat of the recorded Cottingham Sub-Division.
>
> 10. That the Cotners, and their predecessors in title[,] have also demonstrated actual possession, use, and control of that portion of Bonnell's 35[-]foot strip that lies contiguous and adjacent to Cotners' parcels.
>
> 11. That the Cotner[s'] use of the 35[-]foot strip of Bonnell's property that lies contiguous to their parcels has been open, public, and[,] until the acquisition by [Bonnell], exclusive.
>
> 12. That the Cotners and their predecessors in title have caused to be placed upon a portion of the 35[-]foot strip owned by Bonnell[] fences, outbuildings, and other structures.
>
> 13. That the Cotners and their predecessors in title paid all real estate tax[es] and assessments as those same became due and owing to the State of Indiana and Pulaski County[] on their parcels.

---

[2] The parties and the trial court treated the Cotners' claim to the disputed area as a unitary claim to the entire area and did not limit the Cotners' claim to the area of their actual use or occupancy. We will not disturb that treatment on appeal.

14.    That the Cotners and their predecessors in title did not pay any real estate tax[es] or assessments on any portion of the 35[-]foot strip parcel owned by Bonnell or his predecessors in title.

Appellant's App. at 14.

[8]    After entering those findings, the court concluded:

[Bonnell] acknowledges and even stipulates that the [Cotners have] maintained exclusive possession[ and] control[] of the subject real estate for the ten[-]year period of time, and that said control and possession has been open and notorious. [Bonnell,] however, argues that the [Cotners] fail to satisfy Indiana Code [Section] 32-21-7-1, which states:

In any suit to establish title to land or real estate, possession of the land or real estate is not adverse to the owner in a manner as to establish title or rights in and to the land or real estate unless the adverse possessor or claimant pays and discharges all taxes and special assessments that the adverse possessor or claimant reasonably believes in good faith to be due on the land or real estate during the period the adverse possessor or claimant claims to have possessed the land or real estate adversely.

* * *

In the present case, the Cotners did in fact pay all real estate taxes and special assessments along with their predecessors in title to their respective properties. *However, the Cotners could not have in good faith reasonably believed that they were paying even a portion of the real estate taxes or assessments upon the adjoining 35[-]foot strip in light of the fact that on two occasions during the time period in which they are claiming adverse possession[] the 35[-]foot strip of property now owned by*

> *[Bonnell] was put up for tax sale by Pulaski County*. The fact that the [Cotners] never attempted to redeem the subject property from the county either prior to or after the tax sale, nor attempted to acquire the 35[-]foot strip by way of Commissioner's Deed, would defeat their claim of any good faith reasonable belief.

*Id.* at 15-17 (emphasis added). The trial court then concluded that "Pulaski County took possession of the subject real estate pursuant to Indiana statute when the real estate tax[es] and any assessments were not paid." *Id.* at 17. Based on that conclusion, the court further declared that the Cotners' post-tax-sale attempt to establish adverse possession were contrary to provisions of the Indiana Code that prohibit the taking of title from a political subdivision by adverse possession. In short, the court denied the Cotners' claim to title by adverse possession on the ground that their claim "would have been severed even if vested[] by the two subsequent tax sale events by Pulaski County." *Id.* at 19.

[9] However, after finding against the Cotners and for Bonnell on the only pleaded issue before the court, the court then concluded as follows:

> During the time in which the [Cotners] have possessed and used the [disputed] property, they have cause[d] to be placed upon said property certain structures, specifically a garage/outbuilding. The evidence shows that a portion of this outbuilding encroaches on [Bonnell's] parcel. The Court also finds that the garage is of substantial size and construction, the nature of which prevents its removal without significant cost. [This] cost in the Court's experience would far exceed the value of [Bonnell's] entire parcel, not just the portion upon which the building encroaches.

> Therefore, the Court does find that the [Cotners] should be granted a prescriptive easement to that portion of [Bonnell's] 35[-]foot strip parcel upon which [the Cotners'] garage/outbuilding occupies, as well as a prescriptive easement of an additional four (4) feet around the proximity of the garage in order to make repairs and maintenance and access to the outbuilding.

*Id.* at 20. The court then entered judgment accordingly. This appeal ensued.

## Discussion and Decision

[10] Bonnell appeals the trial court's order establishing a prescriptive easement including the area occupied by and immediately adjacent to the Cotners' outbuilding, located within the disputed area. The Cotners cross-appeal and contend that the trial court erred when it denied their claim of title to the disputed area by adverse possession.[3] Because the Cotners' argument on cross-appeal is dispositive, we limit our review on appeal to that issue.[4]

---

[3] We note that Bonnell has not filed a Reply Brief, in which he could have "address[ed] the arguments raised on cross-appeal." Ind. Appellate Rule 46(D)(3).

[4] While we do not reach Bonnell's issue on appeal, we disapprove of the trial court's judgment that the Cotners should be granted a prescriptive easement when that theory of relief was neither pleaded nor argued by the Cotners. As we have explained:

> We have held that fairness requires that the opposing party have "some notice that an issue is before the court which has not been pleaded or has not been agreed to in a pre-trial order." *Aldon Builders, Inc. v. Kurland*, 152 Ind. App. 570, 284 N.E.2d 826, 832 (1972). This is particularly true when the new issue is not unequivocally clear from the evidence presented at trial. *Id.* Notice must be overt, as where the unpleaded issue is expressly raised prior to or sometime during the trial but before the close of the evidence. *K Mart Corp. v. Brzezinski*, 540 N.E.2d 1276, 1281 (Ind. Ct. App. 1989), *trans. denied*. Notice may be implied where the evidence presented at trial is such that a reasonably competent attorney would have recognized the unpleaded issue as being litigated. *Id.* Both parties must litigate the new issue, and implied consent to the trial of that issue will

[11]     Here, the trial court entered findings of fact and conclusions thereon *sua sponte* following a bench trial.

> In the appellate review of claims tried without a jury, the findings and judgment are not to be set aside unless clearly erroneous, and due regard is to be given to the trial court's ability to assess the credibility of the witnesses. A judgment will be clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment, and when the trial court applies the wrong legal standard to properly found facts. While findings of fact are reviewed under the clearly erroneous standard, appellate courts do not defer to conclusions of law, which are reviewed de novo. Where cases present mixed issues of fact and law, we have described the review as applying an abuse of discretion standard. In the event the trial court mischaracterizes findings as conclusions or vice versa, we look past these labels to the substance of the judgment. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made.

not be found unless the parties know or should have known that the unpleaded issue was being presented. *Elkhart County Farm Bureau Co-op. v. Hochstetler*, 418 N.E.2d 280, 283 (Ind. Ct. App. 1981). In addition, implied consent to trial of an unpleaded defense may not be deduced merely because evidence relevant to a properly pleaded defense inferentially suggests a defense not within the pleadings. *Id.* at 284. Furthermore, the opposing party may not insert a new issue into a trial under the cloak of evidence relevant to an already pleaded issue. *Hacker v. Review Bd.*, 149 Ind. App. 223, 271 N.E.2d 191, 195 (1971).

*Columbia Club, Inc. v. Am. Fletcher Realty Corp.*, 720 N.E.2d 411, 423 (Ind. Ct. App. 1999); *see also Hoose v. Doody*, 886 N.E.2d 83, 94 (Ind. Ct. App. 2008) ("evidence supporting adverse possession is not necessarily the same as that establishing a prescriptive easement.").

*Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind. 2005) (internal citations and quotations omitted).

[12]     The Cotners contend that the trial court erred when it denied their claim of title to the disputed area by adverse possession. The doctrine of adverse possession "entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration[.]" *Fraley*, 829 N.E.2d at 486. In *Fraley*, our supreme court summarized these four required elements as follows:

> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
>
> (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");
>
> (3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and
>
> (4) Duration—The claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Id.* These elements must be satisfied for a period of ten years. Ind. Code § 34-11-2-11 (2012). And it is well-established that "successive periods of possession may be tacked together to attain the required statutory period." *Lake Cnty. Trust Co. v. Jones*, 821 N.E.2d 1, 4 (Ind. Ct. App. 2004).

[13] In addition to satisfying the four elements of adverse possession set forth in *Fraley*, an adverse possessor must also comply with Indiana Code Section 32-21-7-1 regarding payment of taxes ("the adverse possession tax statute"). *Wetherald v. Jackson*, 855 N.E.2d 624, 641 (Ind. Ct. App. 2006), *trans. denied*. At all times relevant to this appeal, the adverse possession tax statute required an adverse possessor or claimant to "pay[] and discharge[] all taxes and special assessments that the adverse possessor or claimant reasonably believes in good faith to be due on land or real estate during the period the adverse possessor or claimant claims to have possessed the land or real estate adversely." I.C. § 32-21-7-1 (2012).[5]

[14] Further:

> once a party establishes the elements of adverse possession, "fee simple title to the disputed tract of land is conferred upon the possessor by operation of law, and title is extinguished in the original owner." *Snowball Corp. v. Pope*, 580 N.E.2d 733, 734

---

[5] In material part, this quoted language has been a statutory requirement since May 17, 1927. *See* I.C. § 32-1-20-1 (2000) (the prior codification of the adverse possession tax statute). We also note that the adverse possession tax statute was amended with an effective date of July 1, 2014, but the quoted language was not materially altered. *See* I.C. § 32-21-7-1 (2014).

(Ind. Ct. App. 1991). Once a party has acquired title through adverse possession, that party does not lose title based on acts committed or circumstances existing after title is established. *See Fraley*, 829 N.E.2d at 487; *Berrey v. Jean*, 401 N.E.2d 102, 106 (Ind. Ct. App. 1980) (recognizing that acts of title-holder were "of no matter, since ownership of the land had passed previously to the [adverse holder]"), *overruled on other grounds*, *Fraley*, 829 N.E.2d 476. Our supreme court explained and applied this rule in *Fraley*:

> Fraley argues that the Mingers' possession was not hostile because Mrs. Minger "openly acknowledged the superior rights of the record title holder by making an inquiry about buying the parcel." Between the time of the death of Truman Belew in 1994 and the deed conveying the disputed tract to Keith Fraley in 1996, Eva Minger inquired about the possible purchase of about half of the tract from Melvin Belew. Fraley's contention that this inquiry disproves the Mingers' adverse possession is erroneous because title by adverse possession passes to the claimant by law at the end of the possessory period. *Once title vests in a party at the conclusion of the ten-year possessory period, the title may not be lost, abandoned, or forfeited, even where the party pays rent to the titleholder, agrees to a survey to attempt to find the true boundary line, expresses satisfaction with a survey whose results are inconsistent with the property adversely possessed by him, or states that he does not claim the land and offers to buy it*. The ten-year possessory period required for the Mingers' adverse possession clearly expired long before Mrs. Minger's purchase inquiry after 1994 (which may have merely been an effort to avoid litigation), and her inquiry would not undermine any ownership by adverse possession that the Mingers had gained years earlier.

829 N.E.2d at 487 (citations omitted).

*Garriott v. Peters*, 878 N.E.2d 431, 439 (Ind. Ct. App. 2007) (emphasis added), *trans. denied*.

[15] There is no dispute here that the Cotners satisfied the four elements of adverse possession described in *Fraley*, or that the Cotners and their predecessors-in-interest at all relevant times paid the taxes due on their parcels. Indeed, while the trial court's judgment did not frame its findings or conclusions around the restated *Fraley* elements, it is clear that the parties' dispute before the court centered exclusively on the Cotners' compliance with the adverse possession tax statute with respect to the disputed area, and on appeal Bonnell does not suggest otherwise. *See* Tr. at 70-72. On that question, the trial court concluded that the Cotners had not demonstrated that they had paid the appropriate taxes they reasonably believed in good faith to have been due on the disputed area because that area had twice been subjected to a tax sale by Pulaski County since 1993.

[16] The Indiana Supreme Court reviewed the relevant language of the adverse possession tax statute in *Echterling v. Kalvaitis*, 235 Ind. 141, 126 N.E.2d 573 (1955). In that case, the court noted that "complete legal descriptions of real estate are not present on the tax duplicates issued by county or city treasurers" and that they were "usually sketchy and inaccurate." *Id.* at 575. The court observed:

It would seem to us that, in view of the foregoing, where continuous, open, and notorious adverse possession of real estate has been established for twenty years[6] to a contiguous and adjoining strip of land such as that here in question, and where taxes have been paid according to the tax duplicate, although said duplicate did not expressly include that strip, adverse possession is established to that strip even though the taxes were not paid by the adverse claimant. An example might be where one has record title to Lot No. 1 and has erected a building on that lot, which, twenty years later, is found by some surveyor to be one foot over on an adjoining lot, No. 2—the fact that the owner of Lot No. 1 was assessed for improvements (the building) and real estate (Lot No. 1) would be sufficient to comply with the statute as to payment of taxes.

*Id.* at 575-76.

[17]     In *Fraley*, the Indiana Supreme Court reexamined the holding in *Echterling* and explained that

the [*Echterling*] Court essentially applied the [adverse possession tax] statute to require the adverse claimant to *substantially* comply with the requirement for payment of taxes. Although the opinion did not expressly mention that the claimant's failure to pay taxes on the claimed boundary strip was inadvertent and unintentional, we believe that this is the clear implication.

---

[6] Prior to 1951, the statutory limitation period for adverse possession was twenty years. *See Fraley*, 829 N.E.2d at 484. At all times relevant to the instant appeal, the statutory limitation period has been ten years. *See id.*

829 N.E.2d at 490 (emphasis in original).  The *Fraley* court then reaffirmed its holding in *Echterling*, stating:

> *Echterling* permits substantial compliance to satisfy the requirement of the adverse possession tax statute in boundary disputes where the adverse claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession.[7]

*Id.* at 493.

[18]   The Cotners' claim to the disputed area parallels, almost exactly, the hypothetical scenario discussed in *Echterling*.  Again, in *Echterling* the court stated that an example of a reasonable and good faith belief in the payment of taxes would be "where one has record title to Lot No. 1 and has erected a building on that lot, which, [the necessary time] later, is found by some surveyor to be one foot over on an adjoining lot, No. 2."  126 N.E.2d at 575-76.  Here, the undisputed facts before the trial court demonstrate that, in 1968, the Cotners' predecessors-in-interest had record title to Parcel 8 and they erected the outbuilding on that parcel, which the Cotners later extended.  In 2012, well more than ten years later, Bonnell had a survey done, which found that part of the original outbuilding, and its entire extension, was in the adjoining, disputed area.  Pursuant to *Echterling*, the Cotners' and their predecessors' payments of

---

[7] The *Fraley* court added:  "we decline to extend *Echterling* to permit total disregard of the statutory tax payment requirement merely on grounds that the legal title holder has other clear notice of adverse possession."  829 N.E.2d at 493.  But that limitation is not relevant to the instant appeal.

the taxes assessed on Parcel 8 and Parcel 9 demonstrates their reasonable and good faith compliance with the adverse possession tax statute since at least 1968. *Id.* Accordingly, as a matter of law title to the disputed area vested in the Cotners' predecessors in 1978 and, subsequently, passed to the Cotners. *See Garriott*, 878 N.E.2d at 439.

[19] We thus turn to the trial court's rationale for denying the Cotners' claim to title by adverse possession despite the undisputed facts before it. According to the trial court, the Cotners' status as vested adverse holders was "severed . . . by the two subsequent tax sale events by Pulaski County." Appellant's App. at 19. We cannot agree.

[20] The trial court's conclusion is error as a matter of law. The whole point of the adverse possession tax statute's reasonable-and-in-good-faith exception is to allow for adverse possession to occur in some circumstances where the taxes have not in fact been paid. As our supreme court explained in *Echterling*, the exception within the adverse possession tax statute is premised on the "usually sketchy and inaccurate" tax duplicates on which tax payments are based. 126 N.E.2d at 575. These duplicates do not put property holders on clear notice of their property's boundaries. *See id.* As such, an adverse claimant who reasonably and in good faith believes he is paying the proper taxes pursuant to his tax duplicate will have no notice to the contrary when a tax sale occurs.

[21] Further, to allow a tax sale to divest an adverse holder would improperly allow the record title holder's failure to pay real estate taxes to nullify the adverse

holder's already established title. *See Garriott*, 878 N.E.2d at 439 (quoting *Fraley*, 829 N.E.2d at 487). From the county's perspective, the failure to pay taxes and assessments is a failure of the record title holder, and it is the record title holder who receives personal notice of the tax sale. *See* I.C. § 6-1.1-24-4. But where there is a vested adverse holder, the actions of the record holder are "of no matter, since ownership of the land had passed previously to the [adverse holder.]" *Berrey*, 401 N.E.2d at 106. And, again, here the vested adverse holders reasonably and in good faith believed they were paying the taxes due on the disputed area, in full compliance with the adverse possession tax statute. *See Echterling*, 126 N.E.2d at 575-76.

[22]     Under the trial court's interpretation of Indiana law, vested adverse holders may become divested of their property for failing to pay taxes *despite* reasonably believing in good faith that they are paying the appropriate taxes due. This conclusion is contrary to the adverse possession tax statute's specific and explicit exception that adverse possession may occur in these circumstances. Accordingly, the trial court erred as a matter of law when it concluded that the Cotners' vested title was "severed" by the 1993 and 2011 tax sales. *See* Appellant's App. at 19. As the Cotners' title, which, again, had vested in 1978, was never severed, neither the Board nor Bonnell took title to the disputed area from those tax sales. Hence, we reverse the trial court's judgment and remand with instructions for the court to enter judgment for the Cotners on their claim for adverse possession over the disputed area.

[23]     Reversed and remanded with instructions.

Baker, J., and Friedlander, J., concur.