ATTORNEY FOR APPELLANT
Travis J. Bonnell
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
Jim J. Brugh
Logansport, Indiana



FILED
Feb 16 2016, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 66S03-1509-PL-530

TOM BONNELL,

*Appellant (Defendant below),*

v.

RUBY A. COTNER, DOUGLAS WAYNE
COTNER, ARTHUR J. JOHNSON, JIMMY J.
JOHNSON, and JERRY L. JOHNSON,

*Appellees (Plaintiffs below).*

Appeal from the Pulaski County Circuit Court, No. 66C01-1208-PL-11
The Honorable Patrick B. Blankenship, Special Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 66A03-1410-PL-372

**February 16, 2016**

**Massa, Justice.**

Tom Bonnell purchased a 35-foot-wide strip of land from the Pulaski County Board of Commissioners, and Ruby and Douglas Cotner brought this action to quiet title, claiming that they had previously acquired ownership of a section of that land via adverse possession. The trial court disagreed, finding that the prior sale of the Strip by tax deed extinguished any interest the Cotners

may have had. Nevertheless, the trial court awarded the Cotners a prescriptive easement on certain outbuildings erected on the Strip, and both parties appealed. We affirm the denial of the Cotners' adverse possession claim, and reverse the grant of a prescriptive easement, finding that the sale of the Strip by tax deed extinguished any and all interest the Cotners previously possessed.


**Facts and Procedural History**


In 1948, Leo and Ruth Cottingham subdivided their seven-acre parcel in Pulaski County, Indiana into eleven residential lots. Lot 1 consisted of a two-acre block on the south end of the parcel, while the remaining ten lots were all equal half-acre rectangles, defined as "One hundred (100) feet by Two hundred Fourteen and One-half (214½) feet." Plaintiff's Ex. G at 20; Defendant's Ex. 2. The original survey accompanying the subdivision also accounts for State Highway 119, and it marks the western boundary of these lots as being at the center of the State's right of way. There is also an ancient farm fence 214 feet from the *eastern edge* of the State's right of way. There is thus a 35-foot gap in between the edge of the parcels and the fence on the eastern edge ("the Strip"), which was not a part of the official parcel division; nevertheless, the owners of Lots 2 through 11 treated their respective portions of the Strip as part of their property, and they believed the ancient farm fence marked the property line. Ruby Cotner purchased Lot 8 in 1997.[1] The previous owners of Lot 8 constructed a barn in 1968, and the Cotners expanded upon it with a lean-to in 2010; a portion of these buildings encroaches some distance onto the Strip.

---

[1] Shirley Johnson purchased Lot 9 in 1990, from whom the Johnson Plaintiffs (her sons) obtained title in 2009. Although the Johnsons were initially plaintiffs in this case, they quitclaimed their interest in Lot 9 to the Cotners during the pendency of this action; therefore, the Cotners are the only interested party on appeal.

2

The Strip was originally included by title with the larger farm field to the east; however, it was divided off via quitclaim deed in 1985. The State subsequently sold the Strip twice via tax sale; the first in 1993 to Jeff Kopkey, and the second in 2011 to the Pulaski County Board of Commissioners, who then sold the Strip to Bonnell in 2012. When he bought it, Bonnell believed the Strip was located on the eastern side of the ancient fence. Upon a subsequent survey, however, he discovered the Strip was located effectively in the backyards of the Cottingham Subdivision owners. Bonnell then proposed a sale of each section of the Strip to the property owner who had been occupying the land, at $890 apiece. All the owners eventually reached an agreement with Bonnell except the Johnsons and the Cotners, who asserted ownership of their section of the Strip by adverse possession, and filed this suit to quiet title. Bonnell defended on the grounds the Cotners had not demonstrated they paid taxes on the disputed portion of the Strip and thus could not perfect their adverse possession claim under Indiana law. And in any event, the Indiana Tax Deed Statutes, Ind. Code chs. 6-1.1-24 and -25 (2014), mandate that the sale of any property by tax deed severs all prior claims of ownership, including ownership by adverse possession.

The trial court agreed with Bonnell, finding since title to the Strip ran separately at all times, the Cotners could not reasonably believe they were paying taxes on their portion of the Strip, and thus had not perfected their claim of adverse possession. The trial court went on to find, as a matter of first impression, that even if the Cotners' adverse possession claim *had* been perfected, the subsequent tax sales of the Strip divested the Cotners of their interest. However, the trial court also determined sua sponte that the Cotners should receive a prescriptive easement for use of their outbuildings encroaching onto the Strip.

Both parties appealed, and a unanimous panel of our Court of Appeals reversed and remanded. Bonnell v. Cotner, 35 N.E.3d 275, 284 (Ind. Ct. App. 2015). The panel found the Cotners showed they paid taxes on the outbuildings that encroached upon the Strip, which was sufficient to establish good faith, and the subsequent tax sales could not divest an adverse possessor of their interest, because otherwise "vested adverse holders may become divested of their property

3

for failing to pay taxes *despite* reasonably believing in good faith that they are paying the appropriate taxes due." Id. at 283 (emphasis in original).

We granted transfer, thus vacating the Court of Appeals opinion below. Bonnell v. Cotner, 37 N.E.3d 493 (Ind. 2015) (table); Ind. Appellate Rule 58(A). We now affirm the trial court with respect to the denial of title to the Cotners by adverse possession, but reverse as to granting them a prescriptive easement.

## Standard of Review

The parties' claims were tried without a jury; therefore, we "shall not set aside the findings or judgment unless clearly erroneous." Ind. Trial Rule 52(A). "Findings of fact are only clearly erroneous if there is no factual support for them in the record whatsoever, either directly or by inference." Johnson v. Wysocki, 990 N.E.2d 456, 460 (Ind. 2013). "A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." Woodruff v. Ind. Family & Soc. Servs. Admin., 964 N.E.2d 784, 790 (Ind. 2012) (quoting Nichols v. Minnick, 885 N.E.2d 1, 3 (Ind. 2008)).

## The Cotners Established Their Claim of Adverse Possession of the Disputed Portion of the Strip.

As we explained in great detail in Fraley v. Minger, there are four traditional elements to adverse possession at common law:  control, intent, notice, and duration.  829 N.E.2d 476, 486 (Ind. 2005). Bonnell does not dispute that the Cotners have established all of these elements with respect to the disputed portion of the Strip. Rather, Bonnell relies on our holding in Fraley that, pursuant to Indiana Code section 32-21-7-1 (2008), an adverse possessor is required to pay taxes on the property claimed in order to perfect his or her interest, although substantial compliance is

4

sufficient, so long as "the adverse claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession." Fraley, 829 N.E.2d at 493.[2] Bonnell claims the Cotners did not satisfy this requirement because they paid taxes on the encroaching outbuildings only, and not on the entire disputed portion of the Strip.

We find the Cotners have satisfied the adverse possession tax statute. In Fraley we expressly upheld our prior interpretation of this statutory adverse possession requirement from Echterling v. Kalvaitis, including the following hypothetical where substantial compliance with the adverse possession tax statute would exist:

> An example might be where one has record title to Lot No. 1 and has erected a building on that lot, which, twenty years later, is found by some surveyor to be one foot over on an adjoining lot, No. 2—the fact that the owner of Lot No. 1 was assessed for improvements (the building) and real estate (Lot No. 1) would be sufficient to comply with the statute as to payment of taxes.

Fraley, 829 N.E.2d at 490 (quoting Echterling v. Kalvaitis, 235 Ind. 141, 147, 126 N.E.2d 573, 575–76 (1955)). That precise scenario has occurred here: the Cotners' predecessors-in-interest were assessed tax on the barn beginning in 1968, and at least a portion of that building encroaches upon the disputed portion of the Strip. That is sufficient to establish the Cotners perfected their adverse possessory interest in the disputed area of the Strip as of 1978. See Celebration Worship Ctr., Inc. v. Tucker, 35 N.E.3d 251, 255 (Ind. 2015) (finding adverse possessor had substantially complied with tax statute "because they believed the disputed real estate to be part of the side yard of their lot 4—for which they *actually* paid taxes." (emphasis in original)).

---

[2] Our General Assembly subsequently incorporated the holding of Fraley into Indiana Code section 32-21-7-1. See 2006 Ind. Acts 3606 (clarifying that the adverse possessor need only pay that tax "that the adverse possessor or claimant reasonably believes in good faith to be due").

5

**The Subsequent Tax Sales of the Strip Defeat the Cotners' Claim of
Ownership by Adverse Possession.**

Perfecting an adverse possessory interest, however, does not automatically entitle the Cotners to judgment in their favor. "[T]he doctrine of adverse possession entitles a person *without title* to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration . . . ." Fraley, 829 N.E.2d at 486 (emphasis added). Acquiring ownership by adverse possession does not render operative all the rights and responsibilities of the record title holder; indeed, as demonstrated by the facts of this case, the adverse possessor would first have to succeed in an action to quiet title in order to become the legally acknowledged owner of the property. See App. at 22–26; Ind. Code § 32-30-2-20 (2014) (listing an adverse possessor as one type of plaintiff entitled to bring a quiet title action); Ind. Code § 32-30-3-17 (stating that the final judgment in a quiet title action shall be entered by the county recorder in the "Quiet Title Record"). Moreover, although the Cotners' predecessors-in-interest had a good faith belief that they were paying taxes on the disputed portion of the Strip, it is undisputed that they were not *in fact* paying those taxes. Accordingly, since the record title holder *also* failed to pay the requisite property taxes, the entire Strip was subject to tax sale by Pulaski County. See Ind. Code § 6-1.1-24-1(a), (c).

"A purchaser at a tax sale receives a tax certificate evidencing a lien against the property for the entire amount paid. The lien is superior to all other liens which exist at the time the certificate is issued." Calhoun v. Jennings, 512 N.E.2d 178, 181 (Ind. 1987) (citing Ind. Code § 6-1.1-24-9) (emphasis omitted). Any person may "redeem" the property within a statutory

period of up to one year after the date of sale.[3] Ind. Code § 6-1.1-25-1, -4(a). Once the redemption period expires, the tax certificate holder may petition the court for a tax deed to the property. Ind. Code § 6-1.1-25-4.6(a). Our General Assembly has also *twice* stated that the tax deed "vests in the grantee an estate in fee simple absolute, free and clear of all liens and encumbrances created or suffered before or after the tax sale . . . ." Ind. Code § 6-1.1-25-4(f), -4.6(g). There are a finite number of ways to defeat a tax deed by appeal; claim of title by adverse possession is not among them.[4]

---

[3] The redemption amount is determined based on, among other things, the date of redemption, the amount of outstanding taxes and penalties, the initial minimum bid of the sale, and the ultimate purchase price. See Ind. Code § 6-1.1-25-2.

[4] See Ind. Code § 6-1.1-25-16 ("A person may, upon appeal, defeat the title conveyed by a tax deed executed under this chapter only if:

> (1) the tract or real property described in the deed was not subject to the taxes for which it was sold;
>
> (2) the delinquent taxes or special assessments for which the tract or real property was sold were paid before the sale;
>
> (3) the tract or real property was not assessed for the taxes and special assessments for which it was sold;
>
> (4) the tract or real property was redeemed before the expiration of the period of redemption (as specified in section 4 of this chapter);
>
> (5) the proper county officers issued a certificate, within the time limited by law for paying taxes or for redeeming the tract or real property, which states either that no taxes were due at the time the sale was made or that the tract or real property was not subject to taxation;
>
> (6) the description of the tract or real property was so imperfect as to fail to describe it with reasonable certainty; or

7

Because of the relative strength of a tax deed, there are also several layers of statutory notice of the tax sale proceedings (and each such notice contains no less than fourteen mandatory components). Ind. Code § 6-1.1-24-2; Ind. Code § 6-1.1-25-4.5. The county auditor is required to post a copy of the first notice in the county courthouse at least 21 days prior to the initial tax sale, publish the notice at least once a week for three consecutive weeks, Ind. Code § 6-1.1-24-3, and further send a copy to "the owner *of record.*" Ind. Code § 6-1.1-24-4(a) (emphasis added). Second, prior to the issuance of a tax deed, the purchaser must provide actual notice "to the owner *of record* at the time of the sale and any person with a substantial property interest *of public record* in the tract or real property." Ind. Code § 6-1.1-25-4.5(a) (emphasis added).

Here, although the Cotners' predecessors-in-interest acquired ownership of the disputed portion of the Strip in 1978, they did not seek to quiet title and formalize that ownership. Thus, by statute, the Cotners were not entitled to any more than publication notice of the two tax sales in 1993 and 2011. And the very issuance of those tax deeds is prima facie evidence of the validity of the notice given in those tax sales, evidence that has not been rebutted by the Cotners. See Ind. Code § 6-1.1-25-4.6(g) ("The deed is prima facie evidence of: (1) the regularity of the sale of the real property described in the deed; (2) the regularity of all proper proceedings; and (3) valid title in fee simple in the grantee of the deed."). There is also no evidence in the record that the Cotners or anyone else contested the validity of those tax sales, as permitted by Indiana Code section 6-1.1-25-16. Moreover, the statutory text is uncompromising: the Pulaski County Board of Commissioners obtained "fee simple absolute" in the Strip in 2011, free and clear of any encumbrances. Ind. Code § 6-1.1-25-4.6(g); see also Ind. Code § 6-1.1-25-14 ("An unrecorded instrument does not affect the plaintiff's title as established by the court's [tax deed] decree.").

---

(7) the notices required by IC 6-1.1-24-2, IC 6-1.1-24-4, and sections 4.5 and 4.6 of this chapter were not in substantial compliance with the manner prescribed in those sections.")

Accordingly, under the plain text of the Tax Deed Statutes, in 1993 and again in 2011, the Cotners were divested of their ownership interest based on adverse possession of the disputed section of the Strip.

**The Trial Court's Award to the Cotners of a
Prescriptive Easement in the Barn was Clearly Erroneous.**

We now turn to the trial court's sua sponte award of a prescriptive easement to the Cotners for their continued use of the outbuildings, based on the court's conclusion that the cost of their removal would "far exceed the value of the Defendant's entire parcel, not just the portion upon which the building encroaches." App. at 20.

We begin by noting that the trial court was within its authority to consider awarding a prescriptive easement sua sponte. The Cotners pleaded with particularity in their complaint all of the elements of adverse possession, and "[t]he Fraley formulation for adverse possession also applies to prescriptive easements, save for those differences required by the differences between fee interests and easements." Tucker, 35 N.E.3d at 257 (internal quotations omitted). The only relevant difference here is the requisite statutory period of adverse use—20 years—before the easement vested. Ind. Code § 32-23-1-1. The Cotners also specifically pleaded that the outbuilding was erected in 1968, and that they and their predecessors-in-interest had exercised exclusive control over the entire disputed portion of the Strip since that time. Moreover, in their prayer for relief, the Cotners included the familiar catch-all of "all other relief appropriate under the circumstances." App. at 26. Therefore, there was sufficient evidence before the trial court to determine the Cotners' predecessors-in-interest had perfected a prescriptive easement in the outbuilding as of 1988.

Unfortunately, this attempt by the trial court to craft an equitable remedy was unavailable as a matter of law, again by operation of the Tax Deed Statutes. Indiana Code section 6-1.1-25-

9

4(f)(1) states unequivocally that for a prior easement over property to survive its sale by tax deed, the easement must be "shown by public records."[5] See also Ind. Code § 6-1.1-25-4(g) ("A tax deed executed under this chapter for real property sold in a tax sale: (1) does not operate to extinguish an easement *recorded before the date of the tax sale* in the office of the recorder of the county in which the real property is located . . . ." (emphasis added)). Thus, as with the Cotners' claim of adverse possession, they cannot claim a prescriptive easement in the outbuilding because that easement was never recorded, and was therefore extinguished with the first tax sale in 1993.[6]

## Conclusion

After more than three years of litigation and two vigorous appeals, Mr. Bonnell now owns a 35-foot-by-100-foot section of land in the Cotners' backyard, predominately covered with a pole barn, which Bonnell values at approximately $890. We affirm the denial of the Cotners' claim of adverse possession in the disputed portion of the Strip, and reverse the grant of a prescriptive easement in the Cotners' encroaching outbuildings.

Rush, C.J., and Dickson, Rucker, JJ., concur.
David, J., did not participate.

---

[5] We note that a counterpart of this provision appears in Indiana Code section 6-1.1-25-4.6(g), and it does not specify that prior easements must be recorded in order to survive a tax sale of the property; however, given that the scope of the two provisions is virtually identical, we are bound to read the two sections consistently. See Klotz v. Hoyt, 900 N.E.2d 1, 5 (Ind. 2009) ("Statutes relating to the same general subject matter are *in pari materia* on the same subject and should be construed together so as to produce a harmonious statutory scheme." (internal quotations and alterations omitted)).

[6] Since the second tax deed was issued in 2011, the Cotners did not acquire a second prescriptive easement in the outbuildings prior to the second tax sale, as the requisite 20 years of use had not accrued.